Randy D. WHITE, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 2–1083A363.

Supreme Court of Indiana.

Sept. 10, 1986.

Concurring and Dissenting Opinion
Filed Sept. 15, 1986.

Susan K. Carpenter, Public Defender, Bev Cummings, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

We turn today to a question much debated in Indiana for the past five years: when a petition for post-conviction relief alleges that a guilty plea was not made voluntarily and intelligently, by what standard should the evidence on that claim be tested? We granted transfer in this case to establish a new standard.

On September 25, 1981, appellant Randy D. White appeared with his attorney in Marion Superior Court and pleaded guilty to charges of burglary, a class B felony, and theft, a class D felony. The trial judge sentenced him to consecutive terms of ten years and two years.

In 1983, he filed a petition for post-conviction relief, alleging that his plea of guilty had not been entered knowingly, intelligently, and voluntarily[1] because the trial court failed to advise him of the minimum sentence for each of the charges pending against him, as required by Ind. Code § 35–4.1–1–3(d) (Burns 1979 Repl.). This section had been repealed; the legislation enacted in its place is Ind.Code § 35–35–1–2 (Burns 1983 Supp.). He also challenged the trial court's order that the sentence imposed in this cause be served consecutive to that imposed for an unrelated offense. Of course, this latter question was available to him by way of direct appeal of his sentence.

The trial court denied his petition, but the Court of Appeals held in a memorandum decision that it should have been granted and reversed. *White v. State* (1984), Ind.App., 465 N.E.2d 228, *reh. denied*, 484 N.E.2d 82 (1985). The State filed a petition for transfer to this Court.

We consider first White's motion to dismiss the State's petition for transfer. A party seeking transfer may present in his petition only those grounds contained in his request for rehearing in the Court of Appeals. Appellate Rule 11(B). White argues that the State sought rehearing by claiming that the Court of Appeals had contravened a prior ruling of this Court (Appellate Rule 11(B)(2)(a)) but filed for transfer on the grounds that prior decisions of this Court should be re-examined (Appellate Rule 11(B)(2)(d)). It appears from our review of the record that the State actually presented both arguments in its brief on rehearing, that White chose to respond on the merits to both arguments, and that the Court of Appeals considered both arguments in its memorandum decision on rehearing. Under these circumstances, the purposes of Appellate Rule 11 have been served, and we therefore deny White's motion to dismiss the State's petition.

As petitioner, White had the burden to prove that his plea of guilty was not voluntary and intelligent. The sole evidence he submitted to the trial court hearing his

---

1. Although petitioners, lawyers, and judges commonly use these three terms interchangeably, it seems unlikely that a defendant could enter a plea "unknowingly" as that term is defined under Indiana law. "A person engages in conduct 'knowingly' if, when he engages in the conduct he is aware of a high probability that he is doing so." Ind.Code § 35–41–2–2(b) (Burns 1985 Repl.). Thus our discussion here is couched largely in terms of whether the plea was voluntary and intelligent.

post-conviction petition was the transcript of his plea in 1981. It contained a lengthy discussion between White and the trial judge on a variety of questions, including:

> Court: Do you understand by your plea of Guilty to Burglary, class B felony, the maximum penalty you could receive for a class B felony would be up to twenty (20) years in prison, and up to $10,000.00 fine. The maximum penalty you could receive for a class D felony is up to four (4) years imprisonment and up to $10,000.00 fine. Those are the maximum penalties. I'm not saying that's what you will receive in this case, but I have the duty to explain to you the maximum penalties under both Counts. Do you understand that?
>
> White: Yes, sir, I understand.
>
> Court: Have you gone over the penalty aspect of the case with Mr. Gilroy here, your lawyer?
>
> White: Yes, sir.
>
> Court: Have any questions about the possible penalties?
>
> White: No, sir.
>
> Court: On the other hand if you had a trial you might be proven Not Guilty, and completely exonerated and acquitted, that could be the other possibility if you had a trial. Do you understand that?
>
> White: Yes, sir, I do.

White argues that under the existing case law of this Court, he is entitled to have his petition granted and his conviction set aside, citing *German v. State* (1981), Ind., 428 N.E.2d 234.[2] We have decided that *German* should be overruled and that the judgment of the trial court in this case should be affirmed.

### I. Post-Conviction Relief in Indiana

The care which Indiana courts take to protect the rights of criminal defendants has advanced considerably since the nineteenth century, when one who had pleaded guilty in open court was simply presumed to know what he was doing. The trial judge before whom such a plea was made had little duty with respect to advising the defendant of his rights or making findings about the defendant's plea. Confronted with a claim that a convicted felon was entitled to withdraw his plea because the trial court had not found him guilty, this Court said: "The prisoner, by his confession, has made a finding unnecessary. The court may take the prisoner at his word, and proceed accordingly." *Griffith v. State* (1871), 36 Ind. 406, 408.

Although there was a presumption that one who pleaded guilty had done so voluntarily and intelligently, our courts did not hesitate to set aside convictions when it appeared that a defendant pleaded guilty through coercion or misapprehension of the nature of the proceedings. Several generations before the U.S. Supreme Court held that states were required to do so,[3] Indiana resurrected the ancient common law writ of *coram nobis* as a vehicle by which to provide relief to defendants whose rights had been violated. *Sanders v. State* (1882), 85 Ind. 318 (prisoner whose plea is induced by fear of a lynch mob entitled to withdraw his plea and have a trial); *Myers v. State* (1888), 115 Ind. 554, 18 N.E. 42 (plea induced by false promises rendered to a defendant acting without legal representation should be set aside).

Having perceived the obligation to provide a way to correct manifest injustice imposed in earlier proceedings, Indiana courts have struggled with competing values: (1) the need to vindicate federal and

---

**2.** After the filing of this appeal, this Court decided *Williams v. State* (1984), Ind., 468 N.E.2d 1036, holding that the *German* rule would apply only to pleas entered after December 3, 1981, and that for pleas entered before that date the Court would review the whole record of the post-conviction trial to determine whether a defendant was fully advised, citing *Neeley v. State* (1978), 269 Ind. 588, 382 N.E.2d 714. Although White pleaded on September 25, 1981, this distinction matters not; the only evidence in the post-conviction record *is* the transcript of the original plea and sentencing.

**3.** *Young v. Ragen,* 337 U.S. 235, 69 S.Ct. 1073, 93 L.Ed. 1333 (1949).

state rights by correcting errors, and (2) the need to bring proceedings to a rest, especially where the passage of time reduces the possibility that a new trial will be reliable. Note, *Habeas Corpus and Coram Nobis in Indiana*, 26 Ind.L.J. 529 (1951).

In the twentieth century, this Court acted to require transcription of all guilty pleas and developed case law governing post-conviction proceedings. Rules of the Supreme Court of Indiana, Rule 1–11 (1946 rev.); *State v. Lindsey* (1952), 231 Ind. 126, 106 N.E.2d 230; *Crooks v. State* (1938), 214 Ind. 505, 15 N.E.2d 359. Thus, long before the leading federal cases on guilty pleas, Indiana courts recognized that fundamental fairness required something more than a docket sheet notation that the defendant appeared and pleaded.

In an effort to provide a uniform framework, the General Assembly enacted Ind. Code § 35–4.1–1–3, specifying the information which a trial judge must impart to a defendant before accepting his plea of guilty, and Ind.Code § 35–4.1–1–4, requiring that a trial judge make certain findings. 1973 Ind.Acts, Public Law 325. Although the statute required that the trial judge "address the defendant" and "inform him" that by pleading guilty he was waiving certain rights, this Court concluded that a defendant was not entitled to post-conviction relief where the record showed that he *actually knew* about the rights he was waiving. *Neeley v. State*, 269 Ind. 588, 382 N.E.2d 714 (defendant who testified at post-conviction hearing that pleading guilty meant he was giving up his right to confront his accusers was "advised of his right").

Subsequently, this Court overruled *Neeley* and held in *German* that the failure of the trial judge personally to inform the defendant of each of the advisements listed in Ind.Code § 35–4.1–1–3 at the time he entered his plea of guilty required that the conviction be vacated and the plea set aside. Giving the same advisements through written plea bargain agreements was held to be not an "adequate substitute

for a personal advisement of so fundamental a matter as the concept of waiver." *German*, 428 N.E.2d at 236.

The meaning of this decision was clear. Since Gary German and his co-defendant, Larry Jackson, had each signed plea agreements acknowledging the waiver of his rights, it was not ignorance which made their pleas unintelligent and involuntary. Rather, they were entitled to relief *because the trial judge had not followed the Code* by personally reciting the right they were waiving. In his dissent, Chief Justice Givan (with whom Justice Pivarnik joined) wrote:

> The entire matter of informing defendants of their constitutional rights should be used as a safeguard to see that persons are not misled or tricked into entering pleas of guilty without full knowledge of the circumstances.
>
> I do not think the system should be perverted to the extent that a person who is demonstrably fully informed must be granted a new trial simply because the trial judge did not engage in redundancy concerning warnings to the defendants.

*German*, 428 N.E.2d at 237.

The Indiana General Assembly responded to the *German* decision by passing Public Law 179, 1984 Ind.Acts, which added subsection 35–35–1–2(c) to the Code section on advisements:

> Any variance from the requirements of this section that does not violate a constitutional right of the defendant is not a basis for setting aside a plea of guilty.

This action of the General Assembly cut at the heart of the *German* decision, which had described the judge's obligation to advise defendants as "statutory." 428 N.E.2d at 237. Asked by the Attorney General to give effect to the legislature's enactment, the *German* majority announced in *Austin v. State* (1984), Ind., 468 N.E.2d 1027, that the State had "misconstrued" the *German* decision as being grounded in statute. The Court now declared that strict compliance with the list of advisements was constitutionally required. The legislature's "harmless error" amend-

ment was a nullity, the Court held, because all of the advisements listed in the Indiana Code were of "constitutional dimension." The *Austin* majority declared:

> An accused's entitlement to such advisements, therefore, flows from his due process right to be sheltered from the consequences of a guilty plea entered on less than an informed judgment and not from the legislative inclusion of it in its codification. The legislature may, as a matter of public policy, require advisements that are not of such dimension, but it could not eliminate the requirements of those essential to an informed judgment, which includes the one omitted by the court that accepted the guilty plea.

*Id.* at 1028.

Was the constitution which required each of these advisements the United States Constitution or the Indiana Constitution? Most of the advisements listed in Ind.Code § 35–4.1–1–3 do not have a basis recognized in federal constitutional law. Although the *Austin* majority cited *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), that case does not stand for the broad proposition espoused in *Austin*. Justice Douglas, writing for the Court, identified only three federal constitutional rights which the record must disclose the defendant knew he was waiving before a reviewing court can affirm a finding that the plea was voluntary and intelligent: the right to a trial by jury, the right to confront one's accusers, and the right against self-incrimination. While some members of the U.S. Supreme Court have suggested that the *Boykin* list is not exhaustive, they have not prevailed. *Neely v. Pennsylvania*, 411 U.S. 954, 93 S.Ct. 1934, 36 L.Ed.2d 416 (1973) (Douglas, J., dissenting, with whom Stewart and Marshall, JJ., concur) (asserting that the right to be prov-

en guilty beyond a reasonable doubt is a *Boykin* right); *Johnson v. Ohio*, 419 U.S. 924, 95 S.Ct. 200, 42 L.Ed.2d 158 (1974) (Douglas, J., dissenting, with whom Brennan and Marshall, JJ., concur) (asserting that speedy trial is a *Boykin* right).

If the right to be told each of the advisements listed in the Indiana Code did not derive from the federal constitution, then the "due process" right cited by the majority in *Austin* could only be understood to come from the Indiana Constitution. It is difficult to know from what provision of the Indiana Constitution this "right to be told" was drawn since the opinion rendered in *Austin* makes no reference to the Indiana Constitution. Moreover, examination of our constitution reveals that the words "due process" do not appear, much less terms like "the trial court is not bound by the agreement." [4]

Nevertheless, the *Austin* Court reviewed the Code sections on guilty plea advisement and determined that the legislative enactment had added little to their legal standing. "Ind.Code § 35–35–1–2(a) and (b) merely codified certain specific advisements, a knowledge of which is essential to an informed judgment, without which a waiver may not be said to be voluntary." 468 N.E.2d at 1028. The majority cited with approval *Jones v. State* (1984), Ind. App., 467 N.E.2d 757, in which the Court of Appeals reviewed this Court's declarations that only strict compliance with the statutory advisements would support a finding that a defendant waived his fundamental constitutional rights and said:

> Implicit in this clear language are two logical conclusions. First, failure to inform the defendant of *any* of the rights enumerated in the guilty plea statute results in an invalid waiver of rights.

---

4. The Indiana Constitution does contain a provision declaring that "every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law." Ind. Const. art. I, § 12. If the *Austin* majority meant that Indiana's "due course" clause requires advisements not mandated by federal "due process", such a finding was contrary to a substantial line of cases treating the "due pro-

cess" clause of the federal constitution and the "due course" clause of the Indiana Constitution as interchangeable. *Board of Zoning Appeals v. La Dow* (1958), 238 Ind. 673, 153 N.E.2d 599; *Dean v. State ex rel. Bd. of Med. Registration* (1954), 233 Ind. 25, 116 N.E.2d 503; *Paul v. Walkerton Woodlawn Cemetery Assn.* (1933), 204 Ind. 693, 184 N.E. 537.

And second, all of the items included in the guilty plea statute are of equal weight. All are of "constitutional dimension."

*Id.* at 759.

By declaring that Ind.Code § 35–35–1–2(a) and (b) "merely codified" the advisements required by the Indiana Constitution, the *Austin* decision appeared to give clear guidance. As they existed at the time *Austin* was handed down, these subsections read as follows:

Sec. 2. (a) The court shall not accept a plea of guilty or guilty but mentally ill at the time of the crime, without first determining that the defendant:

(1) understands the nature of the charge against him;

(2) has been informed that by his plea he waives his rights to:

(A) a public and speedy trial by jury;

(B) confront and cross-examine the witnesses against him;

(C) have compulsory process for obtaining witnesses in his favor; and

(D) require the state to prove his guilt beyond a reasonable doubt at a trial at which the defendant may not be compelled to testify against himself;

(3) has been informed of the maximum possible sentence and minimum sentence for the crime charged and any possible increased sentence by reason of the fact of a prior conviction or convictions, and any possibility of the imposition of consecutive sentences; and

(4) has been informed that if:

(A) there is a plea agreement as defined by section 1 of this chapter; and

(B) the court accepts the plea;

the court is bound by the terms of the plea agreement.

Section 2. (b) A defendant in a misdemeanor case may waive the rights under subsection (a) by signing a written waiver.

At first glance, one can see that subsection 2(b) did not "codify certain specific advisements." Instead, it provided that those pleading guilty to misdemeanors could be advised in writing rather than by the judge in open court. However, the very decision which *Austin* reaffirmed, namely *German*, held that written advisements would not be considered "an adequate substitute for a personal advisement of so fundamental a matter as the concept of waiver" and specifically rejected the notion that advisement of rights could be "met by something short of a direct statement." 428 N.E.2d at 236, 237. At least one subsequent case treated subsection 2(b) as though it might be valid. *French v. State* (1984), Ind.App., 472 N.E.2d 210.

If the *Austin* announcement that subsection 2(b) codified the constitution was not fully reliable, one is naturally led to examine the declaration that each of the advisements in subsection 2(a) were of "constitutional dimension."

Among the difficulties with this declaration was that Ind.Code § 35–35–1–2 was not enacted until *after* Dotsie Austin pleaded guilty to committing rape and voluntary manslaughter.[5] Thus, it would be impossible to judge the voluntariness of Dotsie Austin's plea by examining compliance with § 35–35–1–2.

Perhaps the *Austin* Court meant to say that § 35–4.1–1–3 codified the constitution. It called § 35–35–1–2 a recodification of the earlier statute, namely § 35–4.1–1–3, which read:

The court shall not accept a plea of guilty from the defendant without first addressing the defendant and

---

5. Dotsie Austin had been charged with two counts of rape, one count of confinement, and one count of murder. On June 22, 1979, he pleaded guilty to rape and was eventually sentenced to fifteen years under the terms of a plea agreement. On February 15, 1980, he pleaded guilty to voluntary manslaughter in accordance with a plea agreement under which he received a fifteen year sentence concurrent with his earlier sentence. *Austin v. State* (1984), Ind., 466 N.E.2d 445. The General Assembly enacted Ind. Code § 35–35–1–2 effective September 1, 1982. 1981 Ind.Acts, Public Law 298, Sections 4 and 10.

(a) Determining that he understands the nature of charge against him;

(b) Informing him that by his plea of guilty he is admitting the truth of all facts alleged in the indictment or information or to an offense included thereunder and that upon entry of such plea the court shall proceed with judgment and sentence;

(c) Informing him that by his plea of guilty he waives his rights to a public and speedy trial by jury, to face the witnesses against him, to have compulsory process for obtaining witnesses in his favor and to require the state to prove his guilt beyond a reasonable doubt at a trial at which the defendant may not be compelled to testify against himself;

(d) Informing him of the maximum possible sentence for the offense charged and of any possible increased sentence by reason of the fact of a prior conviction or convictions, and of any possibility of the imposition of consecutive sentences;

(e) Informing him that the court is not a party to any agreement which may have been made between the prosecutor and the defense and is not bound thereby.

Although the *Austin* majority called Ind. Code § 35-35-1-2 a "recodification," it is apparent on the face of the two statutes that there are important differences. First, the earlier statute required the trial judge to address the defendant directly and advise him. The later statute instructed the trial judge to "determine" whether the defendant understood, as when a defendant who has signed a written waiver is asked whether he understands the rights he is waiving. Of course, this was the very kind of procedure which the *German* Court had held inadequate. If only direct advice by the trial judge was adequate, then § 35-35-1-2(a) could not possibly codify the constitution.

The General Assembly made other important changes when it repealed § 35-4.1-1-3 and enacted § 35-35-1-2. The legislature eliminated the requirement that the trial judge explain to the defendant that "by his plea of guilty he is admitting the truth of all facts alleged in the indictment or information or to an offense included thereunder and that upon entry of such plea the court shall proceed with judgment and sentence." If the trial courts before whom Dotsie Austin and Gary German pleaded were required by the constitution to advise defendants in accordance with § 35-4.1-1-3, as the *Austin* decision said, how is it possible that § 35-35-1-2(a) could "codify" the Constitution? Two of the advisements present on the statutory list at the time *German* was written were no longer in the Code. Certainly the General Assembly's deletion of these advisements from the Code could have no effect on their "constitutional dimension." [6]

Finally, the earlier statute had required that the defendant be informed that "the court is not a party to any agreement which may have been made between the prosecutor and the defense and is not bound thereby." If this was a constitutional right possessed by the defendant, certainly the legislature could not repeal it and thus § 35-35-1-2 could not be a codification of rights of constitutional dimension. On the other hand, if this piece of advice is required by the constitution, every guilty plea taken since September 1,

---

**6.** Subsequently, one Glen Pharris sought relief on the grounds that when he pleaded guilty in March and May of 1982 the trial judge had not advised him that upon his plea of guilty the court would proceed with judgment and sentence, as required by § 35-4.1-1-3. This Court noted that Pharris had pleaded guilty on the morning of trial and "it was obvious that Appellant was aware the trial would be cancelled." We held, unanimously, that the "trial court therefore fulfilled its obligations and committed no error prejudicial to the defendant." *Pharris v. State* (1985), Ind., 485 N.E.2d 79, 80. Of course, the essence of *German* was that the defendant's knowledge was irrelevant. Unless he was advised, he was entitled to relief. Both implications of this decision were adverse to the *German* rule: either each of the advisements in the code was not "of constitutional dimension" as *Austin* had said or the Court was following a harmless error rule.

1982, by an Indiana trial judge following § 35–35–1–2 is voidable.

If the right to be told of the rights one is waiving (as opposed to the right to *know* that one is waiving certain rights) does not arise from the Indiana Code, or the United States Constitution, or the Indiana Constitution, whence does it come?

Perhaps, the answer was only to be provided later. The *German* rule was what courts call "a prophylactic rule." Its purpose is preventative. In *James v. State* (1982), Ind., 433 N.E.2d 1188, this Court noted that Ind.Code § 35–4.1–1–4(a) was designed to protect defendants against improper coercion by police or prosecutors. Strict compliance has been an absolute prerequisite to finding a knowing and voluntary guilty plea. *Richards v. State* (1985), Ind., 474 N.E.2d 74. Therefore, the procedural mandates of *German* must be satisfied before a due process inquiry will be made. The *German* rule also facilitates judicial review. "The new strict rule [*German*] was designed to require the making of a clear and unmistakable record of statements during the guilty plea proceedings and to facilitate and expedite judicial review." *Crocker v. State* (1985), Ind., 475 N.E.2d 686, 688. These shared characteristics establish *German* as a prophylactic rule. Of course, the *German* approach was not the only curative available, as Judge Garrard noted in his excellent opinion in *Ewing v. State* (1976), 171 Ind.App. 593, 358 N.E.2d 204.

Like all *per se* rules, the rule in *German* had the benefit of being easy to remember and easy to apply. If each of the advisements appeared, the defendant was presumed to have pleaded voluntarily and intelligently and he stayed in jail. If even one advisement was missing, he was said to have acted involuntarily and untelligently, and his conviction was set aside.

Of course, this prophylactic rule has its disadvantages as well. It has required that convictions be set aside when the trial judge's omission was one which our common sense as human beings tells us was utterly harmless. *Shaw v. State* (1983), Ind.App., 456 N.E.2d 758 (Ratliff, J., concurring in result) (a defendant whom the trial judge did not inform of misdemeanor sentencing alternative before he pleaded guilty to felony drunk driving could not have possibly been harmed because the judge entered conviction as a misdemeanor).

Finally, the *German* rule has exposed our post-conviction relief procedures to incredible abuse. It has created a virtual tidal wave of petitions by prisoners, some of whom have slumbered on their rights for five or ten years. It has, by definition, afforded relief only to prisoners who have asserted their guilt before the trial judge and never recanted. It has visited felony convictions with all the finality of default judgments in small claims court.

These disadvantages are well illustrated by the history of *Driver v. State* (1985), Ind.App., 486 N.E.2d 664, *transfer denied.* Driver pleaded guilty in 1969 to a felony. When he committed his third felony in 1982, he found himself facing an habitual offender charge and losing. Within months of his arrival at the state prison, he filed a petition for post-conviction relief alleging that his rights had been violated some thirteen years before. This sequence of events makes it apparent that his objective was singular: success in setting aside the earlier felony conviction would relieve him from the penalty associated with being an habitual offender.[7] The *German* rule has made it relatively easy to avoid the consequences of earlier convictions entered under circumstances which would not have suggested coercion or misapprehension to

7. Driver testified during his post-conviction trial that after he was found to be an habitual offender in the Howard Circuit Court, "I was informed that I could appeal the convictions on my old sentences...." Record at 165. The prosecutor asked, "Is it safe to say that there really wasn't much of a reason for challenging your condition in this cause prior to 1983?" Driver's response: "To my knowledge there wasn't any reason. I didn't know that the charge would ever be used against me again." Record at 169.

anyone standing in the courtroom at the time.

## II. *The Federal Rule*

In the federal courts, the long-standing test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162, 168 (1970). In the seminal case of *Boykin v. Alabama*, the United States Supreme Court considered the validity of Edward Boykin's plea of guilty to a series of five robberies. After the Alabama trial judge accepted Boykin's pleas, a jury convened and found that he should be put to death. There simply was no transcript of the hearing at which Boykin pleaded, only a memorial that he had appeared in court "and pleaded guilty." Justice Douglas wrote for the Court: "It was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." *Boykin*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274, 279.

Douglas said that the requirement that the prosecution spread on the record the prerequisites of a valid waiver was not a constitutional innovation, citing a case in which the Court had held a waiver of the right to counsel invalid:

> Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver. *Carnley v. Cochran*, 369 U.S. 506, 516, 82 S.Ct. 884, 899, 8 L.Ed.2d 70, 77 (1962).[8]

The Court held a plea could be found voluntary and intelligent if there was some showing in the record that the defendant knew he was waiving three basic rights. This was said to be essential to ensure that his decision was voluntary and intelligent and not the product of ignorance, terror, or deception. *See, Brady v. U.S.*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

To assure that the defendant's decision is a voluntary and intelligent act, the U.S. Supreme Court has promulgated Criminal Rule 11, which requires that district judges make certain advisements and inquiries at the time of a guilty plea. The requirements of Criminal Rule 11 bear strong resemblance to the requirements of Ind. Code § 35–35–1–2(a). It requires the district judge to inform the defendant of various rights and of the nature of the crime and its penalties. It also requires inquiries and determinations about the defendant's understanding of the proceedings and the voluntariness of his plea.

The resemblance ends abruptly at the point at which federal courts come to consider claims such as the one Randy White now places before this Court. White makes a very straightforward claim for relief: the trial judge did not make one of the advisements required by statute, the minimum sentence. White does not claim that he was coerced into pleading guilty; he does not claim that had he known the minimum sentence he would have insisted on going to trial rather than pleading guilty. Indeed, he does not even claim that he did not know the minimum sentence; he claims only that the trial judge did not tell him the minimum sentence.

In assessing a similar claim, simple failure to give the required advisements without a showing of prejudice, the U.S. District Court for the Northern District of

---

**8.** This reliance on *Carnley* was something of an overstatement. In that case, the Court held that a defendant who went to trial without an attorney could not be presumed to have waived his right to be represented where the record was silent. Justice Brennan distinguished Carnley's situation from one in which a defendant pleads guilty without counsel, suggesting that the entry of a guilty plea by an unrepresented defendant "might have raised a fact issue as to whether the accused did not intelligently and understandingly waive his constitutional right." *Carnley*, 369 U.S. at 515, 82 S.Ct. at 890, 8 L.Ed.2d at 77. This was indeed the view which Justice Black had expressed for the Court in *Rice v. Olson*, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367 (1945).

Indiana disposed of the petitioner's complaint succinctly: "The Petitioner has failed to state a claim which is cognizable by the federal courts." *Greer v. Duckworth*, 555 F.Supp. 725, 728 (N.D.Ind.1983).

The questions posed in a federal inquiry are considerably different than those Indiana courts have been asking. Looking at the totality of the circumstances surrounding the plea, can it be said that the defendant understood his or her rights? *United States v. Wetterlin*, 583 F.2d 346, 354 (7th Cir.1978), *cert. denied*, 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979). *See, United States v. Rodriguez-DeMaya*, 674 F.2d 1122, 1127–28 (5th Cir.1982).

Was the error in the proceeding a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure? *Hill v. United States*, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962) (failure to ask a defendant whether he wishes to make a statement before being sentenced as required by Criminal Rule 32(a) not a basis for relief under 25 U.S.C. 2255; distinguished from prohibiting a defendant from making a statement, which is a basis for relief). Is it reasonable to believe that if the defendant had known that which he says he did not know, such knowledge would have led him to go to trial rather than plead guilty? *Evans v. Meyer*, 742 F.2d 371 (7th Cir. 1984).

This last question was adopted by the U.S. Supreme Court recently when it considered a claim that a defendant's plea was involuntary because his attorney had misinformed him about his parole eligibility date. The Court decided that such a claim should be analyzed under the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and held that " ... in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v.*

*Lockhart*, 474 U.S. ——, ——, 106 S.Ct. 366, 370, 88 L.Ed.2d 203, 210 (1985).

In deciding *Hill*, the Supreme Court cited with favor the *Evans* decision of the Seventh Circuit, in which Judge Posner analyzed a claim that trial counsel was ineffective because he failed to raise an intoxication defense:

> It is inconceivable to us, and not merely improbable as in *Henderson v. Morgan*, 426 U.S. 637, 644 n. 12, 96 S.Ct. 2253, 2257 n. 12, 49 L.Ed.2d 108 (1976), that Evans would have gone to trial on a defense of intoxication, or that if he had done so he either would have been acquitted or, if convicted, would nevertheless have been given a shorter sentence than he actually received.

*Evans v. Meyer*, 742 F.2d at 375.

The modern evolution of federal case law can be seen in two cases from the United States Supreme Court. In *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), the Court held that failure to comply with Rule 11 required that a conviction based upon a plea be vacated. It described the purposes of Rule 11 this way:

> First, although the procedure embodied in Rule 11 has not been held to be constitutionally mandated, it is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary. Second, the Rule is intended to produce a complete record at the time the plea is entered of factors relevant to this voluntariness determination.

*McCarthy*, 394 U.S. at 465, 89 S.Ct. at 1170, 22 L.Ed.2d at 424–25.

The early version of Rule 11 under which *McCarthy* was decided was much simpler than the one which exists today. It required that the district judge address the defendant and determine that his plea was made voluntarily with an understanding of the nature of the charge and the consequences of the plea. The district judge was also required to determine that there was a factual basis for the plea. Thus, failure to follow any part of the former

rule meant that the judge had omitted a critical step. In *McCarthy*, for example, the judge did not make any inquiry about the defendant's understanding of the nature of the charge.

Chief Justice Warren's statement in *McCarthy* that any noncompliance with Rule 11 entitled a defendant to plead anew was later applied by the Sixth Circuit to the amended version of Rule 11, which provided for a more detailed series of advisements and findings. In assessing a defendant's claim that the district judge had not informed him of a mandatory special parole term after completion of his executed time, that court held: "[A] Rule 11 violation is per se prejudicial and thus must be a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Timmreck v. United States*, 577 F.2d 372, 377 (6th Cir.1978).

This conclusion was unanimously rejected by the Supreme Court on appeal. The Court held that a technical violation of Rule 11 was not an adequate basis for granting collateral relief. Justice Stevens wrote for the Court:

(The) concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas.

Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice. The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas. Moreover, the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea.

*United States v. Smith*, 7 Cir. [ (1971) ], 440 F.2d 521, 528–529 (Stevens, J., dissenting).

*United States v. Timmreck*, 441 U.S. 780, 784, 99 S.Ct. 2085, 2086–2087, 60 L.Ed.2d 634, 639 (1979).

When Timmreck pleaded guilty, the district court failed to inform him of a mandatory special parole term which would follow the executed portion of his sentence. Justice Stevens borrowed language from *Hill v. U.S.*, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962):

We find it unnecessary to consider whether § 2255 relief would be available if a violation of Rule 11 occurred in the context of other agravating circumstances. "We decide only that such collateral relief is not available when all that is shown is a failure to comply with the formal requirements of the Rule". 368 U.S., at 429, 82 S.Ct., at 472.

*Timmreck*, 441 U.S. at 785, 99 S.Ct. at 2088, 60 L.Ed.2d at 639.

The Court's decision in *Timmreck* was altogether consistent with *McCarthy*; indeed, Justice Stevens cited *McCarthy* in support of the ruling. The Court's Advisory Committee has provided an excellent explanation of these developments in its 1982 Note to Rule 11. 8 *Moore's Federal Practice* § 11.01 [7] (2d ed. 1986).

The various federal courts of appeals have developed case law based upon the principles of *McCarthy* and *Timmreck*. In discussing the distinction between failure to inquire about such matters as understanding the nature of the charge and failure to advise properly about the range of penalties, for example, the Third Circuit said:

Because the nature of the charge so intimately relates to the fundamental issue of guilt, we cannot permit dilution of our mandate that the "nature of the charge" requirement of Rule 11 be strictly satisfied.

\*　\*　\*　\*　\*　\*

The required advice concerning the range of possible sentences stands on a somewhat different footing. We note that Rule 11 was amended in 1975 to eliminate the former requirement that the "consequences" of a guilty plea be ex-

plained to the defendant. The amendment of Rule 11(c)(1) narrows the relevant consequences to the "mandatory minimum penalty," if any, and the "maximum possible penalty" that may be imposed at sentencing. Moreover, the *consequences* of a guilty plea are collateral to the paramount issue of guilt or innocence. We do not mean to derogate the extreme importance to the defendant of knowing the range of potential sentences.

\* \* \* \* \* \*

But it must nevertheless be recognized that consideration of the penalty cannot take precedence over, and require more procedural safeguards than, assurance that the defendant comprehends the basis acts which must be proved to establish guilt.

*Horsley v. United States,* 583 F.2d 670, 674–675 (3d Cir.1978).

Thus, while a defendant who could establish that the district judge had failed to make one of the "core inquiries" required by *McCarthy* was entitled to plead anew, one who could establish the judge's failure to advise him precisely according to Rule 11 needed to prove prejudice. *United States v. Caston,* 615 F.2d 1111 (5th Cir. 1980) (advisement that one who pleads guilty may be subject later to perjury for his statements under oath "not one of the core inquiries under Rule 11" and thus not an adequate basis for relief); *United States v. Kriz,* 621 F.2d 306 (8th Cir.1980) (a defendant who was not sworn while entering his plea was not subject later to perjury prosecution and thus suffered no injury when the district judge failed to so inform him).

Federal courts have focused on the likely effect of the district judge's failure to advise a defendant properly before the plea is entered. As the Seventh Circuit has recently said, *per curiam,* in analyzing cases involving collateral attacks on guilty pleas: "Matters of reality, and not mere ritual, should be controlling." *United States v. Frazier,* 705 F.2d 903, 907 (7th Cir.1983). Thus, even though the judge does not ad-

vise the defendant that he will face a minimum special parole term after he completes his executed time, so long as the executed time and the parole term do not exceed the maximum possible imprisonment, the failure to mention special parole "[does] not inherently result in a miscarriage of justice or present exceptional circumstances justifying collateral relief." *United States v. Sisneros,* 599 F.2d 946, 948 (10th Cir.1979). If the total of the executed time and the parole term does exceed the maximum sentence of which the defendant was advised, reducing the total time to the maximum is deemed to "serve fundamental fairness." The defendant is not entitled to replead. *Richardson v. United States,* 577 F.2d 447 (8th Cir.1978).

If the district judge has engaged in an extensive colloquy with the defendant concerning his understanding of the charge, the voluntariness of his decision, and similar questions, even failure to advise him that he waives rights such as the right to cross-examine witnesses and remain silent at trial will not foreclose a finding that the defendant's plea was voluntary. The Sixth Circuit has held that such a failure is "harmless error." *United States v. Stead,* 746 F.2d 355 (6th Cir.1984). *Accord, United States v. Dawkins,* 448 F.Supp. 1343 (E.D.Pa.1978), *aff'd mem.,* 577 F.2d 729 (3d Cir.1978). Where the district judge has not substantially complied, a defendant is entitled to replead. *United States v. Fels,* 599 F.2d 142 (7th Cir.1979). *See also, United States v. Carter,* 619 F.2d 293 (3d Cir.1980) (where district judge failed to advise on five different points, "We are not persuaded that the departures from Rule 11 requirements in this case were harmless.").

Although Rule 11 requires that the district judge personally address the defendant during his plea hearing, it has been held that the district judge may delegate part of this responsibility to others, such as the United States Attorney, without violating the defendant's fundamental rights. *Howard v. United States,* 580 F.2d 716 (5th Cir.1978). *Contra, Coody v. United*

*States,* 570 F.2d 540 (5th Cir.1978), *vacated,* 588 F.2d 1089 (5th Cir.1979).

In short, the federal courts have tended to consider questions such as voluntariness as matters of fact. If the district judge has not made a record from which voluntariness can be deduced, the defendant is entitled to replead. If one of the advisements required by Rule 11 is omitted, the question is not whether there was an omission but whether the defendant actually lacked knowledge and whether this ignorance made any difference. *Manley v. United States,* 588 F.2d 79 (4th Cir.1978); *United States v. Caston,* 615 F.2d 1111. As the Third Circuit has said in reviewing a claim that the district judge did not discuss with a defendant the overt act which was a part of the charge against her: "[Petitioner] failed to allege or prove any specific prejudice resulting from the technical non-compliance with Rule 11. Appellant did not argue that, had there been compliance, her plea decision would have been different. Therefore, the district court did not err in rejecting appellant's Rule 11 claim." *United States v. Laura,* 667 F.2d 365, 372 (3d Cir.1981).

### III. Review of Guilty Pleas

Routine reversal of convictions on technical grounds imposes substantial costs on society. Chief Justice Designate Rehnquist recently enumerated these costs, and we paraphrase his description of them. Jurors, witnesses, judges, lawyers, and prosecutors may be required to commit further time and other resources to repeat a trial which has already taken place. The victims are caused to re-live frequently painful experiences in open court. The erosion of memory and the dispersal of witnesses may well make a new trial difficult or even impossible. If the latter is the case, an admitted perpetrator will be rewarded with freedom from prosecution. Such results prejudice society's interest in the prompt administration of justice, reduce the deterrent value of any punishment, and hamper the rehabilitation of wrongdoers. *United States v. Mechanik* (1986), — U.S. —, 106 S.Ct. 938, 89 L.Ed.2d 50.

The *German* rule has led to reversal in instances where the trial judge's omission cannot genuinely be said to have worked an injustice or, indeed, have made any difference at all. We have concluded that a new method of inquiry for assessing collateral attacks on criminal convictions is required.

■ To decide a claim that a plea was not made voluntarily and intelligently, we will review all the evidence before the court which heard his post-conviction petition, including testimony given at the post-conviction trial, the transcript of the petitioner's original sentencing, and any plea agreements or other exhibits which are a part of the record.

■ A petitioner who claims that his plea was involuntary and unintelligent but can only establish that the trial judge failed to give an advisement in accordance with § 35–35–1–2 has not met his burden of proof. He needs to plead specific facts from which a finder of fact could conclude by a preponderance of the evidence that the trial judge's failure to make a full inquiry in accordance with § 35–35–1–2(a) rendered his decision involuntary or unintelligent. Of course, unless the record reveals that the defendant knew or was advised at the time of his plea that he was waiving his right to a jury trial, his right of confrontation and his right against self-incrimination, *Boykin* will require that his conviction be vacated.

We emphasize that a plea hearing conducted in accordance with Ind.Code § 35–35–1–2 is the best way to assure that a defendant's plea is made voluntarily and intelligently. A defendant fully armed with all the information outlined in the statute is most able to make the voluntary and intelligent decision which the Indiana and U.S. Constitutions entitle him to make. A plea entered after the trial judge has reviewed the various rights which a defendant is waiving and made the inquiries called for in the statute is unlikely to be found wanting in a collateral attack. On the other hand, pleas entered after coercion, judicial or otherwise, will be set aside. De-

fendants who can prove that they were actually misled by the judge, the prosecutor, or defense counsel about the choices before them will present colorable claims for relief.

## IV. *Randy White's Claim*

■ White's claim for relief is that the trial judge failed to advise him of the minimum sentence which could be imposed upon convictions for class B burglary and class D theft. Clearly, the trial judge failed to do so. However, White does not claim that he did not know what the minimum sentences were. He does not claim that if he had known it would have changed his decision. He does not allege any specific facts which would suggest that his decision was the result of coercion or being misled. The transcript of his guilty plea contains extensive inquiry by the trial judge about the voluntariness of his plea. In short, White alleges only a violation of Ind.Code § 35-35-1-2(a); he does not claim any other circumstances which might call into question his repeated assertions to the judge who took his plea that he was guilty and that he had decided, voluntarily, that it was in his best interests to plead guilty. His claim is an inadequate basis for vacating his conviction.

## V. *Sentencing*

■ The trial court ordered that the sentences in this cause be served consecutively to a sentence imposed for an unrelated felony. White committed the instant offenses while he was out on bond awaiting trial of the unrelated offense. The transcript of the sentencing hearing makes it apparent that the trial court regarded consecutive sentences as mandatory under Ind.Code § 35-50-1-2:

Sec. 2(a). Except as provided in subsection (b) of this section, the Court shall determine whether terms of imprisonment shall be served concurrently or consecutively.

Sec. 2(b). If a person commits a crime:

(1) after having been arrested for another crime; and

(2) before the date he is discharged from probation, parole, or a term of imprisonment imposed for that other crime;

the terms of imprisonment for the crimes shall be served consecutively, regardless of the order in which the crimes are tried and sentences are imposed.

White argues that because he had never commenced probation, parole, or imprisonment on his former sentence at the time he committed the present offenses, the mandate of Ind.Code § 35-50-1-2(b) does not apply to him. Though White's argument misses the mark a bit, the issue itself was decided favorably to him in *Groff v. State* (1986), Ind., 488 N.E.2d 711. Because White committed the instant offense before he was sentenced for the earlier ones, the sentence for this crime must be concurrent.

Accordingly, the State's petition to transfer is granted. The opinion of the Court of Appeals is vacated. *German* and *Austin* are overruled. The cause is remanded to the trial court with instructions to vacate that part of its order requiring the sentence in this cause be served consecutive to the sentence in Marion Superior Court Cause No. CR80-412A. In other respects, the judgment of the trial court is affirmed. If appellant has any other basis upon which to establish that his plea was not voluntary and intelligent, he may file a new petition.

PIVARNIK and DICKSON, JJ., concur.

GIVAN, C.J., concurs, except with respect to the issue in section V, to which he dissents with opinion.

DeBRULER, J., dissents with opinion.

DeBRULER, Justice, dissenting.

The importance to the community at large, victims of crime, those accused of crime, prosecution and defense forces, and the due administration of the court system; of maintaining the constitutional and legal integrity of a plea of guilty is nothing short of colossal. The vast majority of all criminal cases, including the most serious cases, is disposed of through the conviction without trial. The majority is mistaken in re-

jecting the present law governing the plea process as the best way to insure the integrity of pleas.

The present law defining the duty of Indiana trial judges finds its source in statements like that of Chief Justice Warren speaking for the U.S. Supreme Court in *McCarthy v. United States* (1969), 394 U.S. 459, 472, 89 S.Ct. 1166, 1174, 22 L.Ed.2d 418:

> It is, therefore not too much to require that, before sentencing defendants to years of imprisonment, district judges take the few minutes necessary to inform them of their rights and to determine whether they understand the action they are taking.

It is my view and one long labored in support of that the judicial responsibility of this Supreme Court in this area is fully satisfied only by requiring Indiana trial judges to make a complete record demonstrating that the judge spoke personally to the accused, advising and interrogating fully, even when he was represented by counsel. And this has been the state legal standard since announced in *German v. State* (1981), Ind., 428 N.E.2d 234, and the state constitutional standard since *Austin v. State* (1984), Ind., 468 N.E.2d 1027. There is a job to be done and the best way to do it is by thoughtful and careful compliance with the requirements of the statute as it was considered by this court in *Austin.* Today, the court overturns *German* and takes Indiana backward, settling for second best.

The *German* rule which mandates setting aside a guilty plea unsupported by a complete record showing that the court complied with the requirements of the guilty plea statute is the product of years of effort by this court in which we unsuccessfully employed encouraging language to bring about conformance with such requirements. Furthermore, the policies which support the rule have much greater weight than the one offered in support of its abolition. Among those policies are fairness to the criminal defendant to a maximum degree, integrity and reliability

of guilty pleas, incentive for trial judges to follow the law and thus promote respect for judges and the judicial system, facilitation of appellate review, and once the system has adjusted to the rule, which it already has, finality of judgments. The policy in support of the new majority as expressed by Justice Shepard is finality of judgments. Grounds going to the nature of this and all judicial institutions suggest that the court's action today in overruling recent constitutional precedent is imprudent. These cases should not be overturned absent grounds having much the greater weight.

As stated in the majority opinion, the *German* rule has been in place for five years. It was however, declared prospective only in application thus diminishing the cost attendant to its rigid enforcement aspect. *Crocker v. State* (1985), Ind., 475 N.E.2d 686. Five years ago the cost-benefit picture for putting the rule in place was debatable and arguable. Such is not the case today. The costs have now been paid and the present and future benefits are clear; compliance is routine and at the highest level. The majority assessment of future costs is fallacious.

In the *White* case, now before us, the trial judge advised the defendant of the maximum sentence, but in lieu of telling him the minimum sentence, told him that he could be acquitted if he went to trial. This judge has been reversed four times on this very same point. *Jones v. State* (1985), Ind., 478 N.E.2d 676. *Williams v. State* (1984), Ind., 468 N.E.2d 1036. *Austin v. State* (1984), Ind., 468 N.E.2d 1027. *Jones v. State* (1984), Ind.App., 467 N.E.2d 757. On the other hand, no other judge of the Marion Criminal Court has ever had a guilty plea declared on appeal to have been deficient because of a failure to advise a defendant of the minimum possible sentence. This tells me that further judgments permitting guilty pleas to be set aside because of non-compliance with the requirements of *German* and *Austin* would be minimal in number, and that

cases of this type are not routine at this point in time, but are instead anomalous.

The majority misreads the *Austin* case. There this court stated:

"An accused's entitlement to such advisements, therefore, flow from his due process right to be sheltered from the consequences of a guilty plea entered on less than an informed judgment and not from the legislative inclusion of it in its codification. The legislature may, as a matter of public policy, require advisements that are not of such dimension, but it could not eliminate the requirements of those essential to an informed judgment, which includes the one omitted by the court that accepted the guilty plea."

The gist of this statement is that when it comes to advisements necessary to render an informed decision to enter a plea of guilty it matters not what the legislature does or does not do. Consequently, the statutory analysis in the majority opinion provides little support for the position there taken. The Constitutional source of the above holding is the due process clause; however, it is unclear in the opinion whether it is the U.S. Constitution or the Indiana Constitution wherein it prescribes "due course of law". Surely this ambiguity is no basis upon which to depreciate the fundamental underlying value which is that a defendant ought not to be permitted to plead guilty unless a clear record is made that he understands the minimum sentence which he could receive if convicted of the charged crime.

Compliance with the *German* rule requiring strict adherence with the guilty plea statute is furthermore simple and inexpensive. The trial court need only keep the statute in hand as a checklist as the personal exchange with the defendant is had. The majority rule on the other hand sanctions a less formal attitude on the part of judges. This will unnecessarily lead to increased complexity and cost of post-conviction litigation. The volume of judicial work in the post-conviction area is not so much determined by the number of cases filed, since that is at the will of the prisoner, as it is by the complexity of litigation. The relaxed judicial attitude which the majority opinion fosters also visits an unnecessary risk upon the system of loss of the basic values safeguarded by the statute and constitutions. Few I believe will fail to perceive the view of judicial capacities underlying the majority position, and the skepticism upon which it is based all as being served up with a very highly seasoned sauce.

GIVAN, Chief Justice, concurring in part and dissenting in part.

I concur with this well-drafted majority opinion with the exception of the last portion of the opinion dealing with the sentencing.

I have reviewed our decision in *Groff v. State* (1986), Ind., 488 N.E.2d 711. Although I originally concurred in that opinion, I now feel it is in error. The statute quoted in the opinion clearly states "(1) [a]fter having been arrested for another crime; and (2) [b]efore the date he is discharged...." Ind.Code § 35–50–1–2(b). I think it is clear that *Groff* was in error in saying that in order for the sentences to be consecutive the defendant had to be not only arrested for another crime but also sentenced on his prior crime. To me the clear language of the statute indicates that the consecutive sentence is to be used at any time a crime is committed after the defendant has been arrested for another crime.

The paragraph of the statute referring to discharge from probation and parole or the term of imprisonment simply sets the limitation of the time extent in which the consecutive sentence will be imposed. I now believe *Groff* should be overruled and the sentence in the instant case affirmed.