**Charles SULDON, Appellant–Petitioner**

**v.**

**STATE of Indiana, Appellee–Respondent**

**No. 49A05–9101–PC–24.**

Court of Appeals of Indiana,
Fifth District.

Nov. 12, 1991.

Susan K. Carpenter, Public Defender, Lorinda Meier Youngcourt, Deputy Public Defender, Indianapolis, for appellant-petitioner.

Linley E. Pearson, Atty. Gen., Mary Dreyer, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-respondent.

SHARPNACK, Judge.

Charles Suldon appeals from the denial of his petition for post-conviction relief (P–CR) alleging that he was not competent to plead guilty to class A felony rape and class A felony robbery. We affirm.

Suldon raises one issue for review which we restate as:

Whether the post-conviction court erred in finding that Suldon did not meet his burden of proving that his guilty plea was not made knowingly, intelligently and voluntarily.[1]

The facts most favorable to the judgment of the post-conviction court are as follows. On April 15, 1984, Suldon raped an elderly woman at knifepoint after confining her in her car and robbing her. The state filed an information charging Suldon with rape, robbery and confinement. Pursuant to Suldon's written request for psychiatric examination, the trial court appointed Doctors Dwight Schuster and Ronald Hull to examine Suldon. Dr. Hull filed his report on August 13, 1984. In that report, Dr. Hull stated:

His [Suldon's] attitude and behavior was relatively passive, but he was able to relate to the examination in a productive manner. He tended to speak very softly and mumbled somewhat, but communication was adequate. There were no indications of any disturbances in his current reality sense. His thought processes were organized and relevant.... His intellectual capacity is in the mildly retarded range and is sufficient for him to be able to comprehend the various options available to him in his current situation....

It is my opinion that this defendant has sufficient mental capacity to understand the nature of the charges against him, the proceedings thereon, and to assist his attorney in his defense.

(Record, 31.) Dr. Schuster's report, filed August 9, 1984, also concluded that Suldon was able to understand the proceedings against him and to assist his attorney in preparing a defense. On August 22, 1984, the trial court found that Suldon was competent to stand trial following a hearing at which both Drs. Hull and Schuster testified. The court set the cause for a jury trial on September 17, 1984.

Prior to the trial date, Suldon submitted a plea of guilty to the rape and robbery

1. In the single issue Suldon frames for review, he contends that he was denied effective assistance of counsel. However, nowhere in Suldon's brief does he attempt to argue that point. He has therefore waived that claim. Ind. Appellate Rule 8.3(A)(7).

charges, pursuant to a written plea agreement. The trial court held a guilty plea hearing on September 13, 1984. At the hearing the trial court carefully explained to Suldon the rights that he would waive pursuant to pleading guilty. When the trial court asked Suldon if he understood those rights, he answered yes. However, when the court asked Suldon if he had any questions, Suldon said that he did not understand all of his rights. Suldon gave a somewhat rambling and incoherent explanation of which rights he did not understand. The trial court again explained to Suldon the rights he would waive by pleading guilty. Suldon indicated that he understood. When Suldon indicated that he wished to plead guilty to the rape but not to the robbery, the trial court told him that was not what the plea agreement stated and recessed the court. Upon return from the recess, Suldon indicated that he wanted to plead guilty to both crimes. The trial court then elicited from Suldon a factual basis for the plea.

On April 26, 1988, Suldon filed his P–CR petition from which the present case arises.

*Adcock v. State* (1982), Ind., 436 N.E.2d 799 sets forth our standard of review on appeal from the denial of a P–CR petition.

> In a proceeding for post-conviction relief, the petitioner has the burden of establishing his grounds for relief by a preponderance of the evidence. Ind.R.P.C. 1 § 5. The judge hearing the petition is the sole judge of the weight of the evidence and the credibility of witnesses. *Turman v. State*, (1979) Ind. [271 Ind. 332], 392 N.E.2d 483. On appeal from an adverse judgment, the petitioner must demonstrate that 'the evidence as a whole was such that it leads unerringly and unmistakably to a decision in his favor; that is, one opposite to that reached by the trial court.' *Sotelo v. State*, (1980) Ind. [273 Ind. 694], 408 N.E.2d 1215, 1216.

436 N.E.2d at 800–801.

Suldon claims that the P–CR court could not have found that he was competent to plead guilty under the proper standard of competency. He acknowledges that he in-

dicated to the trial court that he understood the rights he was waiving by pleading guilty, but he claims that he was not sufficiently rational to understand those rights or the consequences of waiving them. He contends that the determination of the two psychiatrists that he could understand the nature of the proceedings against him and that he was capable of assisting in his defense was not by itself sufficient to demonstrate his competency to plead guilty, and that the transcript of the plea hearing clearly demonstrates that he was not competent to plead. Suldon relies upon *Starks v. State* (1985), Ind., 486 N.E.2d 491 and *Adcock v. State* (1982), Ind., 436 N.E.2d 799 among other cases, for the proposition that the standard for competency to plead guilty is fundamentally different from the level of competency to stand trial.

■ A guilty plea must be made voluntarily and intelligently because it is a waiver by the defendant of important constitutional rights. *White v. State* (1986), Ind., 497 N.E.2d 893, 905. A defendant cannot voluntarily and intelligently waive his constitutional rights if he is not sufficiently rational to do so.

■ The standard to be used in determining a defendant's competence to plead guilty is somewhat unclear. In *Starks*, our supreme court addressed a petitioner's claim that the post-conviction court erred by applying the standard for competency to stand trial to his contention that he was not competent to plead guilty. The supreme court affirmed noting:

> When the special findings and conclusions are read, it is apparent that the trial court did not deem its determination of competency to plead guilty to be restricted to the standard applicable in determining competency to stand trial.... The conclusions specifically described the competency to stand trial standard as non-dispositive and referred specifically to the capacity to make rational decisions. This was appropriate and in conformity with the requirement in *Adcock* that elements present when pleading guilty, such as understanding the conse-

quences of the plea and having the capacity to choose between alternatives presented at such proceedings, be open to consideration.

*Starks*, 486 N.E.2d at 492. In *Adcock*, the case referred to by the *Starks* court, the petitioner argued that the trial court gave undue weight to the determination that petitioner was competent to stand trial because the question of his competency to stand trial was fundamentally different from the question of whether he could freely and intelligently plead guilty. *Adcock*, 436 N.E.2d at 801. The court responded by stating:

> We believe that the trial court correctly gave significant weight to that determination, but [did] not deem it dispositive. The findings of fact indicate that he [the trial court] also gave significant weight to other factors. We are satisfied that the court did not err in this regard.

*Id.*

However, in a later case the supreme court equated competency to plead guilty with competency to stand trial. In *Gibson v. State* (1986), Ind., 490 N.E.2d 297, the court addressed a claim that the trial court had erred by not conducting a competency hearing pursuant to I.C. § 35–5–3.1–1 where the trial court allegedly doubted defendant's competency. The court stated, "If a judge has reasonable grounds to believe that the defendant is competent, that is, he believes the defendant is able to understand the proceedings and assist in his defense, no further hearing is necessary." *Id.* at 299.

We need not decide whether the competency to stand trial is directly equivalent to competency to plead guilty because we find that, even under *Starks* and *Adcock*, we must affirm the decision of the P–CR court. The P–CR court was entitled to give significant weight to the opinions of Drs. Schuster and Hull that Suldon was capable of understanding the proceedings against him and of assisting in his defense. In addition, Dr. Hull noted that Suldon's thought processes were orderly and rational and that, although mentally retarded, he was capable of comprehending the various options available to him. Furthermore, the post-conviction court did not deem the determination of Suldon's competency to

plead to be restricted to the standard applicable to his competency to stand trial. This is demonstrated by its second 'conclusion of law' where it stated: "This court concludes that the trial court properly satisfied itself that the petitioner possessed the ability to know and understand the consequences of his election to plead guilty." (Record, 214.)

Suldon claims that he was so incoherent at the plea hearing that the only permissible conclusion is that he was not competent to plead guilty. In particular, he points to a portion of the transcript after the trial court had accepted his guilty plea where Suldon said, "Do I still get a (inaudible)" and the the trial court responded "No. You entered a plea of guilty now so, just have—probation department will come and talk to you." (Record, 285.) Suldon claims the only permissible inference is that he asked if he would still receive a trial. He contends the above exchange demonstrates that he did not understand that he was waiving his right to a jury trial. We disagree. Suldon's speculation as to what the inaudible word was is not the only permissible inference, and, pursuant to our standard of review we must accept the inference most favorable to the decision of the post-conviction court. Furthermore, Suldon had previously indicated that he understood that he was waiving his right to a jury trial.

Although the transcript of the plea hearing could support an inference that Suldon could not understand the nature of the rights he was waiving, the opposite inference was also permissible, particularly in light of Dr. Hull's report. We find that the evidence does not lead unerringly to the conclusion opposite that reached by the court below.

For the reasons herein contained, we affirm the decision of the P–CR court.

AFFIRMED.

MILLER and RUCKER, JJ., concur.