**Frank WILLIAMS, Appellant
(Petitioner Below),**

v.

**STATE of Indiana, Appellee
(Respondent Below).**

No. 582S204.

Supreme Court of Indiana.

June 21, 1983.

Susan K. Carpenter, Public Defender of Indiana, Paul Levy, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Petitioner (Appellant) pled guilty, pursuant to a plea bargain agreement, to Commission of a Felony While Armed, Ind.Code § 35–12–1–1 (Burns 1975) and was sentenced to twenty (20) years imprisonment. This appeal from the denial of post conviction relief presents but one issue: "Whether the State is required to make an affirma-tive showing of voluntariness, where a defendant shows that his guilty plea proceedings were affected by impermissible judicial comment."

At the outset, we restate our standard of review in post conviction proceedings: .

"Petitioner had the burden of proof and stands in the shoes of one appealing from a negative judgment. The trial judge, as trier of the facts, is the sole judge of the weight of the evidence and the credibility of the witnesses. It is only where the evidence is without conflict and leads to but one conclusion, and the trial court has reached an opposite conclusion, that the decision will be disturbed as being contrary to law." *Neville v. State,* (1982) Ind., 439 N.E.2d 1358, 1360 (citations omitted).

Petitioner was initially charged, by information in two counts, with Kidnapping and Assault and Battery with Intent to Kill. On March 3, 1977 he appeared in court and offered a "Stipulated Plea and Agreement" by which he agreed to plead guilty to the instant charge and the State recommended a twenty year sentence. At that time, the trial court advised Petitioner of his rights and obtained waivers thereof and also questioned Petitioner in order to establish a factual basis for the guilty plea. The matter was continued to March 28, 1977, the date set for trial, at which time the court would announce whether it had accepted the plea. The judge also stated:

"Based on what you tell me and if the jury heard that, I am certain that you would receive a life sentence. Mr. Troumouliaris (Public Defender) I think you have been fortunate to work out a plea bargain agreement of this nature with the prosecutor's office." R. at 42–43.

On March 28, 1977 Petitioner appeared in court. Against the advice of counsel, he asked to withdraw his guilty plea and requested a trial by jury. The judge responded:

"Mr. Williams, when you appeared before me on March 3rd, I indicated to you that

I would order a pre-sentence report, a copy of which I have ordered, I have studied it and read it. Between you and I, I think the jury should determine whether the man is guilty or innocent. After I read the report I wrote a letter to Mr. Golonka. I was horrified as to the term and condition of what occurred." R. at 49.

The judge then granted Petitioner's request and made arrangements to expedite the matter, with the selection of the jury to commence that afternoon.

After a short recess, the court noted that Petitioner's codefendant had agreed, under oath in open court as part of a plea bargain agreement, to testify against Petitioner, if the case were to go to trial. At this point, Petitioner's counsel stated that Petitioner wanted to go through with the original plea agreement and the State agreed. In response, the judge questioned Petitioner, who answered in the affirmative that he had been present when his codefendant had indicated he would testify for the State and that he had considered this turn of events in making his decision to plead guilty. In the course of the remainder of the hearing, the judge made several additional comments:

"Mr. Troumouliaris, this Defendant is very fortunate that he is being able to tender a plea of guilty to 'Commission of a Felony while armed.' I can understand your position, why you have tried to influence him to so plead. There is no question in my mind that he would be found guilty of kidnapping. * * *" R. at 59.

" * * * I am convinced that based upon the Pre-Sentence Report that I have read, based upon your version of what happened in Court, based upon the fact that the co-defendant would testify against you, that there would be no jury in this country, based on the law in the State of Indiana, which I researched would not have convicted you of Kidnapping wherein you have received a life sentence. I reluctantly, and I mean that, do you know what the word reluctant means?

"A. No, I don't.

"Q. I am trying in a way that I don't know why I am doing it, I really shouldn't do it. My secretary walked into my chambers and asked if I had a hard weekend and I said 'No, I hadn't' but I wanted her to read the Pre-Sentence Report. You are a very fortunate man that you were not charged with murder in the first degree. Do you understand that? It is the worst Pre-Sentence Report that I have read. The victim did not die, for the grace of god, in this particular case. I can understand why the State of Indiana hates to put the victim through all of that again. * * *" R. at 63–64.

At the post conviction hearing, Petitioner testified that he understood that he had a right to a jury trial and that the jury, not the judge, would render the verdict. Additionally, we note, even though it has never been raised, that at the time of the charged offense, the only penalty for Kidnapping was life imprisonment. Ind.Code § 35–1–55–1 (Burns 1975).

Against this background, Petitioner understandably does not argue that the judge's comments induced the plea, although he testified that, based upon the judge's comments, he did not think he could obtain a fair trial. The record reveals that on March 3, 1977 Petitioner tendered the plea bargain agreement and expressed an intention that the court adopt it. Only then did the judge express certainty, based upon Petitioner's admissions in support of a factual basis for the plea, that the jury would convict. We also have no doubt that if the jury had heard Petitioner confess, as the judge had done, it would have convicted him of Kidnapping. The subsequent sentence of life imprisonment would not have been a matter of judicial discretion. *See* *State v. Palmer,* (1979) 270 Ind. 493, 497, 386 N.E.2d 946, 949.

The record does not indicate exactly why Petitioner had changed his mind on March 28, 1977; however, it does suggest a strong motive. Ostensibly, Petitioner felt that he had a better strategic chance for acquittal as long as his accomplice did not testify for

the State. When, however, the accomplice let his intentions be known, Petitioner, realistically facing the possibility of conviction upon two felonies, one of which carried a sentence of life imprisonment, recognized the benefits of the plea bargain agreement. He even acknowledged that he had considered that his accomplice would testify against him, in making the decision to plead guilty. Moreover, his initial decision of March 28, 1977, to go to trial, supports an inference that, despite the judge's comments of March 3, 1977, Petitioner thought he would receive a fair trial, a thought which changed only after he was apprised of the strength of the State's case. Petitioner's actions on March 28, 1977 thus cast considerable doubt upon the believability of his subsequent testimony at the post conviction hearing.

In his argument, Petitioner asks us to require that the State "make an affirmative showing of voluntariness, once a defendant-petitioner shows that his guilty plea proceedings were affected by impermissible judicial comment." based upon the following passage from *Anderson v. State,* (1975) 263 Ind. 583, 588, 335 N.E.2d 225, 228:

> "While we cannot say that the trial court here induced an involuntary guilty plea, neither can we say that, based on the record, it did not. The irregularity of a presiding trial judge conducting plea bargaining makes it even more imperative that a sound record affirmatively showing voluntariness be made. This was not done. We can therefore only reverse."

In this case the trial court was not involved in the negotiations which produced the plea agreement. This aspect distinguishes it from *Anderson, supra.* Additionally, the record does not show that Petitioner's guilty plea was affected by impermissible judicial comment. The editorializing in which the trial court engaged was unnecessary and unwise, but it does not detract from the record, which commands an inference that Petitioner pled guilty to a lesser offense in light of the strength of the State's case upon the original charges and

to avoid the more severe sentence attendant to convictions thereon. Petitioner has not sustained his burden of demonstrating that the trial court's judgment was contrary to law. Accordingly, said judgment is affirmed.

GIVAN, C.J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.