John B. ELLIS, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 10S05–0010–PC–593.

Supreme Court of Indiana.

March 23, 2001.

Susan K. Carpenter, Public Defender of Indiana, Tracy A. Nelson, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Eileen Euzen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

Appellant John B. Ellis seeks post-conviction relief, claiming that his guilty pleas to four rapes and related crimes were involuntary because the trial judge rejected the initial plea agreement as likely too lenient and indicated during the hearing the minimum sentence he would accept. We grant transfer to clarify the law about a judge's proper role in such matters, and affirm the denial of post-conviction relief.

### Facts and Procedural History

In January 1989, the State charged Ellis with numerous felonies arising from four separate rapes that occurred in Jeffersonville during a six-week period in early 1988. Ellis entered into a plea agreement that provided for twenty-year concurrent sentences on all charges. On February 15, 1990, the court conducted a hearing on the proposed agreement. During the hearing, one of the victims, Jennifer Himelick, described her ordeal and objected to the proposed sentence. The trial judge decided to reject the agreement, saying:

> What I'm going to do is somewhat unusual because I don't usually do this in these cases and I want to make certain that everybody understands that I respect [the prosecutor's] decision and the decision of these other women in this situation so I'm not going to accept the Agreement today. I'm going to state what I will accept in this particular instance. I'll accept the Agreement with all concurrent sentences opting out Counts V and VI as it applies to Ms. Himelick and her case will go to trial or I will accept the Plea Agreement opting out Ms. Himelick's charges, Count V and VI, and then if Mr. Ellis accepts the plea and takes 20 years on the Rape in Ms. Himelick's case and agrees to accept consecutive sentencing in her case then I'll accept the Plea Agreement. So the sentences would be all concurrent with

the exception of hers. As it applies to her case, they would have to be consecutive....

(R. at 162.)

Defense counsel asked if the court would grant a change of venue, based on local media coverage of the case, should Ellis decide to go to trial on the Himelick charges. The judge indicated openness to the request, subject to a hearing to assess the extent of bias in the community, and suggested the possibility of calling a "test jury." The court also cautioned Himelick that a trial would not necessarily result in a conviction, because Himelick was unable to identify Ellis positively as her attacker and because the admissibility of DNA evidence against Ellis had not yet been determined.

Ellis knew that he faced a potential sentence of over 300 years if convicted on all counts at trial. He discussed his alternatives with his attorney.

Two months later, the parties submitted a new plea agreement that provided for a twenty-year sentence for all the charges related to Himelick followed by concurrent twenty-year sentences on all other charges. The aggregate sentence of forty years was, of course, consistent with what the judge previously said he would accept.

At a hearing on this new agreement, the court fully advised Ellis of his rights and established a factual basis for the plea. Ellis affirmed that he understood the plea agreement and that his plea was free and voluntary. His counsel expressed the opinion that Ellis would gain no advantage in proceeding to trial because the DNA evidence could not be successfully challenged. The court approved the agreement and imposed sentence in accordance with it.

Ellis has argued in this post-conviction proceeding that the judge's comments in rejecting the first plea proposal rendered Ellis' final plea involuntary. (Appellant's Br. at 1.) Ellis asserts that "he felt pressured into accepting the judge's terms for

fear of receiving a longer sentence if he went to trial and further believed he could not get a fair trial if he did not accept the judge's terms." (Appellant's Br. at 17.)

The post-conviction court denied relief. The Court of Appeals affirmed, holding that Ellis failed to establish his grounds for relief by a preponderance of the evidence. *Ellis v. State,* 734 N.E.2d 311, 312–14 (Ind.Ct.App.2000).

■ A petitioner claiming that his or her guilty plea was involuntary, and appealing from a denial of post-conviction relief, must show the reviewing court "that the evidence presented during the post-conviction proceedings is without conflict and, as a whole, leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *Curry v. State,* 674 N.E.2d 160, 161 (Ind. 1996) (citing *Spranger v. State,* 650 N.E.2d 1117, 1119 (Ind.1995)).

### Limits on Judicial Involvement in Plea Agreements

■ A defendant's guilty plea must be voluntary. *White v. State,* 497 N.E.2d 893 (Ind.1986). The trial judge has a duty to assure that this is so, and also to impose a sentence that fits both the crime and the offender. Judicial participation in plea bargaining therefore presents special cause for concern. As the Ohio Supreme Court warned in *State v. Byrd,* 63 Ohio St.2d 288, 407 N.E.2d 1384, 1387 (1980):

A judge's participation in the actual bargaining process presents a high potential for coercion. The defendant often views the judge as the final arbiter of his fate or at the very least the person in control of the important environment of the courtroom. He may be led to believe that this person considers him guilty of the crime without a chance of proving otherwise. He may infer that he will not be given a fair opportunity to present his case. Even if he wishes to go to trial, he may perceive the trial as a

hopeless and dangerous exercise in futility.

Our own modern examination of the judicial role in bargained cases commenced with *Anderson v. State*, 263 Ind. 583, 335 N.E.2d 225 (1975). There, the trial judge and Anderson negotiated an agreement for a plea in return for an executed sentence of eleven years, over the apparent opposition of the prosecutor. *Id.* at 586, 335 N.E.2d at 227. The judge openly acknowledged his role, saying: "The Court accepts the plea of guilty with the plea bargaining done by the Court. Show that in your record, so it[']s not the Prosecutor's fault, it's not the Sheriff's fault, I'll take the blame for it." *Id.*

■ This Court took a dim view of the idea that the judge and the defendant would negotiate a disposition. While concluding that such bargaining did not render a plea involuntary as a matter of law, we observed that the analysis of the facts and circumstances of such an event occurs "from the perspective that judicial participation in plea bargaining is highly suspect." *Id.* at 587, 335 N.E.2d at 228. A judge's primary responsibility is to maintain the integrity of the legal system by personifying evenhanded justice, recognizing that the judge's considerable sentencing power may strongly influence the accused. *Id.* (citation omitted).

The sentencing judge in this case, of course, was hardly negotiating one-on-one with the defendant as the trial judge had done in *Anderson.*

Rather, the court followed a standard path for entertaining a bargain submitted by the parties. The judge ordered a presentence report and had it before him on the date set for sentencing. He heard testimony by the victim, the arguments of counsel, and so on. This was in accordance with the provisions of our statute governing entry of judgment and sentencing, Ind.Code Ann. 35–38–1 (West 1998).[1] The Code contemplates that the court will approve the plea agreement and sentence in accordance with it or reject the agreement and move the case along towards trial or a different proposed agreement. *See, e.g.,* Ind.Code Ann. § 35–35–3–3 (West 2000).

Cases following *Anderson* provide insight into when judicial involvement does or does not go too far. In *Williams v. State*, 449 N.E.2d 1080 (Ind.1983), after the defendant pled guilty, the court observed that he was fortunate to have worked out an agreement because a jury likely would have convicted him of kidnapping, which would have carried a life sentence. *Id.* at 1081. The defendant later withdrew his plea with the court's permission but then re-entered it after his co-defendant agreed to testify against him. *Id.* at 1082. The court again told the defendant how fortunate he was to have avoided almost certain conviction and a life sentence. *Id.*

---

1. Indiana Code § 35–38–1–3 says:

Before sentencing a person for a felony, the court must conduct a hearing to consider the facts and circumstances relevant to sentencing. The person is entitled to subpoena and call witnesses and to present information in his own behalf. The court shall make a record of the hearing, including: (1) a transcript of the hearing; (2) a copy of the presentence report; and (3) if the court finds aggravating circumstances or mitigating circumstances, a statement of the court's reasons for selecting the sentence that it imposes.

Indiana Code § 35–38–1–8 provides, in relevant part:

(a) Except as provided in subsection (c), a defendant convicted of a felony may not be sentenced before a written presentence report is prepared by a probation officer and considered by the sentencing court. Delay of sentence until a presentence report is prepared does not constitute an indefinite postponement or suspension of sentence. (b) A victim present at sentencing in a felony or misdemeanor case shall be advised by the court of a victim's right to make a statement concerning the crime and sentence.

In affirming denial of Williams' post-conviction voluntariness claim, we distinguished *Anderson* by noting that the trial court did not participate in the negotiations. *Id.* at 1083. Further, the record in *Williams* "command[ed] an inference" that the guilty plea to a lesser offense was based on the strength of the evidence and not on the judge's comments. *Id.*

By contrast, we concluded that a judge had gone too far in the very recent case of *Garrett v. State*, 737 N.E.2d 388 (Ind. 2000). The trial judge pressed Garrett at length to plead guilty by emphasizing the potential sentence and ultimately declaring, "I'm telling you, if it's me and you get found guilty with this record you'll get the [maximum] eighty years." *Id.* at 389. The judge went on to ask, in a disparaging manner, what defense Garrett planned to present. *Id.* We refused to condone either the query and comments on Garrett's defense or the "depth of the court's inquiry regarding Garrett's decision to go to trial." *Id.* at 391. We also disapproved the court's statement of its sentencing intentions as "clearly inappropriate." [2] *Id.*

Ellis' circumstances are more akin to *Williams* than to either *Anderson* or *Garrett*. Unlike in *Anderson*, where the trial court actually took credit for conducting the negotiation, the court here merely responded to a proposed agreement that had been previously negotiated by the parties without any involvement by the court.

Unlike *Garrett*, the court here did not pressure Ellis to enter or even consider a guilty plea. Indeed, one of the two alternatives the judge suggested involved trial on one set of charges. Nor did the court here threaten or otherwise express any intent to impose an especially harsh sentence if Ellis opted to proceed to trial. In further contrast to *Garrett*, the court did not disparage Ellis' proposed defense. In fact, the judge pointed out in Ellis' presence that the State's case relied on DNA evidence that might or might not be admissible at trial.

Here, as in *Williams*, the court reacted to a proposed plea only after it was negotiated by the parties and presented to the court as a mutual agreement. The court did not engage in any "unnecessary and unwise" "editorializing." *Williams*, 449 N.E.2d at 1083. The parties here proposed an agreement that the court, exercising its discretion, declined to accept. Rather than sending the parties away to guess again at what might pass muster in some judicial version of hide-the-ball, the court indicated that the proposal was too lenient and offered two alternatives that it would deem acceptable, given the nature of the charges and what the court already knew from the presentence report and the hearing.

■ While judicial involvement in plea negotiations can certainly go too far, a complete prohibition on judicial comment regarding a proposed plea agreement would create a separate set of problems. When a court exercises its discretion to reject a plea agreement, it is in both parties' interests that the court explain its reasons. *See United States v. Rodriguez*, 197 F.3d 156, 158 (5th Cir.1999) (noting that federal district courts may express their reasons for rejecting plea agreements). If a proposal falls outside the range of what the court regards as reasonable, it will be helpful to the parties to know whether the court found the proposal too lenient or too harsh, so that they may re-negotiate if both choose to do so. This Court sometimes follows such a practice when it sits as a court of first instance in hearing attorney discipline cases. *See, e.g., Matter of Haecker*, 664 N.E.2d 1176 (Ind.1996) (parties informed that bargained sanction was too lenient; later agreement with greater sanction approved).

---

**2.** Garrett waived this claim for review, however, by failing to object or otherwise challenge the judge's actions before he declined to plead guilty and proceeded to trial. *Garrett*, 737 N.E.2d at 391.

While the American Bar Association's Standards for Criminal Justice have changed over time, Indiana's statutory procedure and the sequence of events in this case are largely congruent with the current version of these standards:

> A judge should not ordinarily participate in plea negotiation discussions among the parties. Upon the request of the parties, a judge may be presented with a proposed plea agreement negotiated by the parties and may indicate whether the court would accept the terms as proposed and if relevant, indicate what sentence would be imposed. Discussions relating to plea negotiations at which the judge is present need not be recorded verbatim, so long as an appropriate record is made at the earliest opportunity. For good cause, the judge may order the record or transcript of any such discussions to be sealed.[3]

*A.B.A. Standards for Criminal Justice* 14–3.3(d) (3d ed.1997).

■ As the Standards indicate, a court may offer guidance as to what sentence it might find marginally acceptable, taking into account a presentence report prepared by the probation department. The message must not, of course, carry any express or implied threat that the defendant may be denied a fair trial or punished by a severe sentence if he or she declines to plead guilty. *Matter of Cox*, 680 N.E.2d 528, 529–30 (Ind.1997) (judge disciplined for telling defendant that those who demand jury trial and get convicted receive higher sentences).

The trial judge's response to the original plea proposal did not render Ellis' eventual guilty plea involuntary. The court did not press Ellis to plead guilty rather than to proceed to trial. Faced with a proposed sentence that fell outside the range the court considered reasonable, it merely advised the parties of the low end of that range, as guidance for any further negotia-

tions. It did so in a way that carried no express or implied threat of punishment. The judge's agreement to entertain a request for a change of venue, and his emphasis on the unresolved DNA admissibility issue, demonstrated that he retained appropriate open-minded impartiality regarding the case.

After his initial plea was rejected, Ellis had two months to consider his alternatives with the advice of counsel. The court again fully apprised Ellis of his rights and the consequences of his revised plea. Ellis asserted on the record that his plea decision was free and voluntary. We agree that it was.

### Conclusion

We affirm the denial of post-conviction relief.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.

---

**3.** In this case, of course, the entire exchange during the plea hearing was recorded verbatim. Where discussion occurs in a setting such as a pre-trial conference, a pre-trial order or a chronological case summary notation will frequently suffice.