**Gregory Leonard WRIGHT, Appellant-Defendant,**

v.

**STATE of Indiana, Appellee-Plaintiff.**

No. 29A02–0102–CR–120.

Court of Appeals of Indiana.

Aug. 10, 2001.

---

William P. Greenaway, Noblesville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Gregory L. Wright challenges the sufficiency of the evidence supporting his conviction for Theft, as a Class D felony.

We affirm in part, and reverse and remand in part, with instructions.

### FACTS AND PROCEDURAL HISTORY

On April 11, 1999, Wal-Mart loss prevention officers Randall Smith, John Mulheran, and Margaret Bickle observed Wright enter the Carmel Wal-Mart store carrying two bags of clothing. The officers watched as Wright placed the bags of clothing on a counter at the service desk, took an empty shopping cart, and proceeded to the housewares section of the store. Bickle saw Wright remove items from the shelves in the housewares aisle, and all three loss prevention officers saw Wright return to the service desk with his cart full

of pots, pans, and flatware. Wright left the cart of goods at the service desk and went back out to the parking lot, where he and a companion unloaded more pots and pans from a car into a second shopping cart. The officers then watched Wright get in line at the service desk with both shopping carts full of goods.

As Wright waited in line, one of the loss prevention officers told a manager to authorize a refund for anything Wright attempted to return, regardless of whether he had a receipt. Accordingly, when Wright requested a refund for all of the items in both shopping carts, including items that he had taken off the shelves and items that he had retrieved from the car in the parking lot, he was given a full cash refund, totaling $880.57. Wright then left the store, and the loss prevention officers stopped him in the parking lot with the money.

The State charged Wright with theft, as a Class D felony. At trial, the court issued a jury instruction which stated, in part, that "[a] person's control over property of another person is unauthorized if it is exerted, 1) without the other person's consent, 2) in a manner or to an extent other than that which the person has consented, [omitting subsection 3] 4) by creating or confirming a false impression in the other person." Record at 447. The jury found Wright guilty as charged and the trial court entered judgment of conviction accordingly. He now appeals.

## DISCUSSION AND DECISION

 Wright challenges the sufficiency of the evidence supporting his conviction for theft. In resolving this question, we neither reweigh the evidence nor assess the credibility of the witnesses. *Bunting v. State*, 731 N.E.2d 31, 33 (Ind.Ct.App.2000), *trans. denied.* We will affirm a conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.* at 33-34. We will reverse a conviction, however, if the record does not reveal substantial evidence of probative value and there is a reasonable doubt in the minds of reasonably prudent persons. *Id.* at 34.

 In order to convict Wright of theft,[1] the State had to prove that Wright "knowingly or intentionally exert[ed] unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use[.]" Ind.Code § 35-43-4-2(a); *Chambliss v. State*, 746 N.E.2d 73, 77 (Ind.2001). Wright contends on appeal that the State failed to prove that his control over Wal-Mart's money was "unauthorized" within the meaning of Indiana Code § 35-43-4-1(b). The trial court defined "unauthorized" in its jury instructions by quoting portions of Indiana Code Section 35-43-4-1(b), which provides in relevant part:

a person's control over property of another person is "unauthorized" if it is exerted:

---

**1.** Wright's charging information refers to "U.S. currency and/or clothing" as the property of Wal-Mart over which he exercised unauthorized control. However, the evidence presented at trial mainly pertained to Wright's efforts to obtain U.S. currency. In its opening argument, the State asserted that Wright "asked for an even exchange for the clothes he brought in," and identified only the money as the property over which Wright exerted unauthorized control in both opening and closing arguments. Record at 299. Addi-

tionally, although all three witnesses testified that Wright brought the clothing in with him, Smith testified that "[the clothing] did not come from our shelf," and Mulheran testified that "there was nothing stolen with the clothing items or anything," and that "they weren't ours." Record at 357, 377. Based on the evidence established at trial, we conclude that the State presented insufficient evidence to prove beyond a reasonable doubt that Wright exerted unauthorized control over the clothing.

(1) without the other person's consent;

(2) in a manner or to an extent other than that to which the other person has consented; [or]

\* \* \*

(4) by creating or confirming a false impression in the other person[.]

I.C. § 35-43-4-1; Record at 447.[2]

 The question presented is an issue of first impression. We have not previously considered the meaning of the word "consent" as used in subsections (1) and (2) of this statute. The interpretation of a statute is a question of law reserved for the courts. *State v. Rans*, 739 N.E.2d 164, 166 (Ind.Ct.App.2000), *trans. denied.* Appellate courts review questions of law under a de novo standard and owe no deference to a trial court's legal conclusions. *Id.* If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation. *Id.* However, when the language is susceptible to more than one construction, we must construe the statute to determine the apparent legislative intent. *Id.* The task of appellate courts with respect to statutory interpretation has been summarized as follows:

> We ascertain and implement legislative intent by "giving effect to the ordinary and plain meaning of the language used in the statute." The statute is examined and interpreted as a whole and the language itself is scrutinized, including the grammatical structure of the clause or sentence at issue. Within this analysis, we give words their common and ordinary meaning, without "overemphasizing

a strict literal or selective reading of individual words."

*Id.* (citations omitted). Penal statutes are to be strictly construed against the State to avoid enlarging them by intendment or implication beyond the fair meaning of the language used. *Id.* Courts may consult English language dictionaries to ascertain the plain and ordinary meaning of a statutory term. *State v. D.M.Z.*, 674 N.E.2d 585, 588 (Ind.Ct.App.1996), *trans. denied.*

"Consent" is defined as: "agreement, approval, or permission as to some act or purpose, esp[ecially] given voluntarily by a competent person." BLACK'S LAW DICTIONARY 300 (7th ed. 1999). All three Wal-Mart loss prevention officers testified that they knew that Wright was returning items which he had not previously purchased.[3] Nonetheless, officer Smith "called the manager and told him to approve [the returns]." Record at 314. We conclude that when Wal-Mart approved the returns, it consented to give Wright money in exchange for the merchandise he "returned."

Indiana Code Section 35-43-4-1(b) makes no distinction between actual and apparent consent, and we are bound by the ordinary and plain meaning of the word. *See Tyson v. State*, 619 N.E.2d 276, 293-95 n. 19 (Ind.Ct.App.1993) (discussing culpability required for commission of rape; noting generally distinction between actual and perceived consent), *trans. denied.* Although it was a deception, Wal Mart voluntarily and expressly authorized the refund and thereby gave its consent. But for Wal Mart's consent, there would have been no theft. We are constrained to hold that Wright obtained the refund with Wal

---

2. Although the charging information did not refer to any specific definition of how Wright's control was unauthorized, the jury was only instructed on subsections (1), (2), and (4) of I.C. § 35-43-4-1(b).

3. Because the loss prevention officers were in the act of performing Wal Mart's business within the scope of their authority, their knowledge is imputed to Wal-Mart. *See Madison County Bank and Trust Co. v. Kreegar,* 514 N.E.2d 279, 281 (Ind.1987).

Mart's consent, within the meaning of Indiana Code Section 35-43-4-1(b)(1) and (2).

■ Wright further contends that his possession of the money was not unauthorized under Indiana Code Section 35-43-4-1(b)(4) because he did not create a false impression. Again, we must agree. A defendant cannot create a false impression in one who knows the defendant's representation to be false. *Harwei, Inc. v. State*, 459 N.E.2d 52, 57 (Ind.Ct.App.1984) (finding no false impression created where officers engaged in "sting" operation paid for repairs known to be. unnecessary). Here, Wal Mart approved Wright's return knowing that he was attempting to pass off its goods as his own. Under these circumstances, no false impression was or could have been created.

■ Since Wal-Mart consented to the refund, and Wright did not create or confirm a false impression in Wal-Mart that the property at issue was his own, the State failed to prove that Wright exercised unauthorized control over Wal-Mart's property, and the evidence was insufficient to support his conviction for theft. Wright concedes, however, that the evidence most favorable to the judgment supports a conviction for the offense of *attempted* theft. *See Harwei*, 459 N.E.2d at 58. This court may order a modification of the judgment of conviction to that of a lesser included offense because of insufficiency of evidence on a particular element of the crime. *Patterson v. State*, 729 N.E.2d 1035, 1043 (Ind. Ct.App.2000). Attempted theft is an included offense of theft. I.C. § 35-41-1-16(b); *Harwei*, 459 N.E.2d at 58. An attempt is a felony of the same class as the crime attempted. I.C. § 35-41-5-1; *State ex rel. Camden v. Gibson Circuit Court*, 640 N.E.2d 696, 701 (Ind.1994). Here, the evidence clearly establishes that Wright acted with the culpability required for commission of theft and engaged in conduct which constituted a substantial step towards the commission of the crime, thus meeting the statutory definition of attempt. *See* I.C. § 35-41-5-1; *Harwei*, 459 N.E.2d at 58. As such, we remand this cause to the trial court to modify the judgment of conviction against Wright to the offense of attempted theft, and the judgment so modified is affirmed.[4]

Affirmed in part, and reversed and remanded in part, with instructions.

SHARPNACK, C.J., and RILEY, J., concur.

---

4. Wright also asks that we remand this matter to the trial court for resentencing. Trial courts have a duty to impose a sentence that fits both the crime and the offender. *Ellis v. State*, 744 N.E.2d 425, 427 (Ind.2001). However, Wright does not explain how the trial court violated this duty, or how his culpability is diminished by the fact that Wal Mart knew what he was doing. To the contrary, he notes that in *Harwei*, we remanded to the trial court to modify the judgment from theft to attempted theft, but did not remand for resentencing. *Harwei*, 459 N.E.2d at 58. We see no reason why the same result is inappropriate here.