

# IN THE
# Court of Appeals of Indiana


FILED
May 07 2025, 8:40 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

Richard J. Campos,

*Appellant-Petitioner*

v.

State of Indiana,

*Appellee-Respondent*

---

May 7, 2025

Court of Appeals Case No.
24A-PC-2008

Appeal from the Franklin Circuit Court

The Honorable Clay M. Kellerman, Judge

Trial Court Cause No.
24C02-2311-PC-597

---

**Opinion by Judge May**
Judge Tavitas and DeBoer concur.

**May, Judge.**

Richard J. Campos appeals the denial of his petition for post-conviction relief. Campos argues his convictions and sentence must be overturned because the trial court improperly inserted itself into his guilty plea negotiations, which rendered his guilty plea involuntary. Because Campos has not demonstrated trial court behavior that rendered his plea involuntary, we affirm the denial of his petition for post-conviction relief.

## Facts and Procedural History

On June 22, 2011, the State charged Campos with Class A misdemeanor possession of marijuana,[1] Class D felony possession of marijuana,[2] and Class A misdemeanor domestic battery.[3] Campos and the State engaged in discovery and plea negotiations. Multiple trial settings were rescheduled based on continuance requests by Campos. On July 30, 2013, the trial court set Campos's charges for trial on October 23, 2013.

On October 15, 2013, the parties appeared for a pre-trial hearing and presented a signed plea agreement to the court. The agreement provided the State would amend the third count from Class A misdemeanor domestic battery to Class B misdemeanor disorderly conduct[4] and Campos would receive concurrent

---

[1] Ind. Code § 35-48-4-11.

[2] Ind. Code § 35-48-4-11(1).

[3] Ind. Code § 35-42-2-1.3(a).

[4] Ind. Code 35-45-1-3(1).

sentences of 24 months (with 22 months suspended to probation) for Class D felony possession of marijuana and 180 days (with all 180 days suspended) for Class B misdemeanor disorderly conduct. As the trial court was reviewing the agreement with Campos in open court, the following discussion occurred:

> THE COURT: Opening [sic] the formal parts in the case, you're putting together Counts I and II. You'll be sentenced to 24 months in the Franklin County Security Center. Is it 12 months or 22 months?
>
> THE STATE: Twenty-two months is the intention of the parties, Judge.
>
> THE COURT: I thought you said 12?
>
> THE STATE: No. Twenty-two. Mr. Campos – his prior history that I have, he has a misdemeanor from 1999. A felony from February 2002. The OWI from 2004 is a misdemeanor, and the PI from 2004 is a misdemeanor. I have – excuse me. I forgot about the first possession of marijuana. That was along with the other count. That is correct.
>
> THE COURT: Well, based on that prior history, there would have to be more executed time, somewhere along the line of 24/18 or something like that. So if you guys want to talk about that or do we have a trial date?
>
> [DEFENSE]: Yes, in two weeks, Judge.
>
> THE COURT: It's in two weeks?
>
> THE STATE: I believe it's next Wednesday.

THE COURT:      Huh?

THE STATE:      Next Wednesday.

THE COURT:      So – it's next Wednesday?

THE STATE:      Yes.

THE COURT:      So we'd have to call a jury today.  Which we can do that, so based on the prior history, how much marijuana are we talking about?

THE STATE:      It wasn't – it wasn't a great deal of it, Judge.  I don't know if I have an actual – let me look in the book and see if there was an actual amount of weight.

[CAMPOS]:      To be honest, it was in between, like, a half to ¾ of an ounce.

THE COURT:      Well, on the prior conviction you got more time than this is.  One year with – I mean, the prior conviction which was the misdemeanor is the same amount of time.  So I – that – actually it's less time.  So that's where I'm coming from.

The plea agreement, based on the prior record, based on his previous sentence; Mr. Campos, I can't accept the plea agreement as it's written.  So we'll go ahead and call a jury today.  Discovery and everything's been exchanged and all that?

[DEFENSE]:      It has, Judge.

THE COURT:      Okay.  We'll call the –

THE STATE:        Judge, can we approach for a second?

THE COURT:        Sure.

(Sidebar began at 10:24 a.m., transcribed as follows:)

[DEFENSE]:        He did an actual 60 for the misdemeanor.

THE COURT:        Where's that?  I didn't see it.

[DEFENSE]:        One year and 120 suspended.  This is – no, he's going to plead it.  He's already getting it.  I mean, the longer he's already did some of that.

THE STATE:        The battery.

[DEFENSE]:        Would you do 20 for the 20?

THE COURT:        The only thing is, it's got to be more than that.  That's the same as that, isn't it?

[DEFENSE]:        He had to do – he only did a month or he did two months actual on that.

THE COURT:        So 24/20 would be okay?

[DEFENSE]:        Well, the only thing is the only reason – the way I looked at it is that along with a DUI, and resisting too, so maybe those facts.  This on, the facts is [sic] that he and his girlfriend whatever, got into it.  They showed up and he got arrested for that.  And then he started telling that –

THE STATE:      Then when the police showed up, no it's fine, it's fine.

[DEFENSE]:      So it's – yeah he has gone to rehab since then, Judge.  He didn't complete the program but he was there for a while.  It seemed like he really kind of turned his life around. He's got more prospects now, which he hasn't had in years.  So it does really seem like he's trying to take a step forward and do the right thing, compared to how he's lived in the past.  That's kind of what we're looking at as swell [sic].

THE COURT:      I just know it's got to be more than that.

THE STATE:      How long was he in rehab?

THE COURT:      Why don't you guys talk about it?

THE STATE:      Yeah.  That's fine.

THE COURT:      Okay?

THE STATE:      I'll give it.

(Sidebar ended at 10:25 a.m.)

(Parties confer.)

[DEFENSE]:      Judge, what happened was, while this was pending, he got picked up on a non-support.  He plead guilty to that.  He got his initial or something, and then Al Pinicker (phonetic) arranged for him to go the [sic] rehab, which he did. He was there for 45 days and then he got employment so he left

the rehab to go to the job. So he has 45 days in a rehab, in-patient that was, I guess, set up by Alan.

THE STATE: So it's the – well then if he did 45 days, I'd give him credit that would get us – we get 24/18 so we get – just a little bit more time and we do that. Would the Court accept that?

THE COURT: Where did you do rehab?

[CAMPOS]: Salvation Army Adult Rehabilitation Center.

THE STATE: Thought so.

THE COURT: He was there 45 actual days?

[DEFENSE]: 45 actual days. It was 45 actual, right?

[CAMPOS]: Yeah.

THE COURT: Okay.

THE STATE: I'm okay with that.

THE COURT: I'll go with that.

(Parties confer.)

THE COURT: Mr. Campos, the plea has been amended. It now reads 24 months in the Indiana Department of Corrections with 18 months suspended. . . . The Defendant's received credit

for 45 actual days, time served, time spent in treatment at the Salvation Army Center.

Count III, 180 days in the security center. No time suspended. Is that now your agreement?

[CAMPOS]:      This is all concurrent, right?

THE STATE:     Mm-hm.

[CAMPOS]:      Yeah.

THE COURT:     Okay. Do you understand that this is an agreement between you and the State of Indiana?

[CAMPOS]:      Yes, sir.

THE COURT:     This plea does call for probation. Do you understand that if you're placed on probation and if you violate any of those terms of probation, you could be ordered to execute that portion of the suspended sentence?

[CAMPOS]:      Yes, sir.

THE COURT:     You guys have already taken into account his criminal history. Are you out on bond on any other charges?

[CAMPOS]:      No, sir.

THE COURT:     When you committed this, were you on any kind of parole/probation?

[CAMPOS]:         No, sir.

THE COURT:        Nothing?  Are you a drug abuser or an
alcoholic?

[CAMPOS]:         I've been recovering.

THE COURT:        Recovering?

[CAMPOS]:         The past, yes, sir.

THE COURT:        Okay.  Has anyone forced you, threatened
you, or placed [you] or your family in fear to get you to plead
guilty?

[CAMPOS]:         No, sir.

THE COURT:        Do you feel that the plea that you're offering
is of your own free choice and decision?

[CAMPOS]:         Yes, sir.

(Ex. Vol. at 45-51.)  The State provided a factual basis for the plea, and then

Campos pled guilty pursuant to the amended agreement.  The trial court

accepted his plea and entered an abstract of judgment in accordance with the

amended agreement.

[4]    On October 30, 2023, Campos, pro se, filed a petition for post-conviction relief

and an affidavit of indigency.  The trial court forwarded the petition and

affidavit to the State Public Defender.  On December 19, 2023, Campos, by

counsel, filed an amended petition for post-conviction relief that asserted "Campos's guilty plea was not entered into knowingly, intelligently, and voluntarily . . . because the trial court judge was a party to the plea agreement." (Appellant's App. Vol. 2 at 31.) The court set a final hearing on the petition for May 8, 2024. The parties appeared for the hearing, but the only evidence presented were paper exhibits that Campos offered in support of his petition. The parties did not provide any argument, but they were given two weeks to file proposed findings and conclusions. On August 2, 2024, the post-conviction court denied Campos's petition in an order that contained numerous detailed findings and the following conclusions:

> THEREFORE, the Petitioner, Richard J. Campos has not met his burden of proof. The plea of guilty entered pursuant to an amended plea agreement on October 15, 2013 was made knowingly, intelligently and voluntarily. Nothing the Court did at the plea hearing rendered the plea of guilty involuntary. The record of the guilty plea hearing is sufficient affirmative evidence to prove voluntariness. Therefore, the Amended Petition for Post-Conviction Relief dated December 19, 2023 is denied.

(*Id*. at 62.)

## Discussion and Decision

[5] "A post-conviction proceeding is a civil proceeding in which a [petitioner] may present limited collateral challenges to a conviction and sentence." *Wilson v. State*, 157 N.E.3d 1163, 1169 (Ind. 2020), *reh'g denied*. To obtain relief, a petitioner must establish any claims "by a preponderance of the evidence." *Id*.

Herein, the post-conviction court ruled on a paper record without receiving any testimony from witnesses. Because we can review the same paper evidence that was available below, we give "no deference" to the post-conviction court's findings and "review the denial of [the] petition for [post-conviction relief] *de novo*." *See Bell v. State*, 173 N.E.3d 709, 715 (Ind. Ct. App. 2021) (emphasis in original).

[6] Campos argues his guilty plea was involuntary because the trial court judge participated in plea negotiations. A trial court "shall not accept a plea of guilty . . . without first determining that the plea is voluntary. The court shall determine whether any promises, force, or threats were used to obtain the plea." Ind. Code § 35-35-1-3(a). A plea is not rendered involuntary "solely because it is the product of an agreement between the prosecution and the defense." Ind. Code § 35-35-1-3(c). Before accepting a plea, a trial court is required to determine the defendant:

> (1) understands the nature of the charge against the defendant;
>
> (2) has been informed that by the defendant's plea the defendant waives the defendant's rights to:
>
>> (A) a public and speedy trial by jury;
>>
>> (B) confront and cross-examine the witnesses against the defendant;
>>
>> (C) have compulsory process for obtaining witnesses in the defendant's favor; and

> (D) require the state to prove the defendant's guilt beyond
> a reasonable doubt at a trial at which the defendant may
> not be compelled to testify against himself or herself;
>
> (3) has been informed of the maximum possible sentence and
> minimum sentence for the crime charged and any possible
> increased sentence by reason of the fact of a prior conviction or
> convictions, and any possibility of the imposition of consecutive
> sentences;
>
> (4) has been informed that the person will lose the right to
> possess a firearm if the person is convicted of a crime of domestic
> violence (IC 35-31.5-2-78); and
>
> (5) has been informed that if:
>
>> (A) there is a plea agreement as defined by IC 35-31.5-2-
>> 236; and
>>
>> (B) the court accepts the plea;
>
> the court is bound by the terms of the plea agreement at the time
> of sentencing and with respect to sentence modification under IC
> 35-38-1-17.

Ind. Code § 35-35-1-2(a). "'A plea entered after the trial judge has reviewed the various rights which a defendant is waiving and made the inquiries called for in the statute is unlikely to be found wanting in a collateral attack.'" *Davis v. State*, 217 N.E.3d 1229, 1233 (Ind. 2023) (*opinion on reh'g*) (quoting *White v. State*, 497 N.E.2d 893, 905 (Ind. 1986)).

[7] In this case, there is no question that Campos received the advisements and had the understanding required by Indiana Code section 35-35-1-2(a). (*See* Ex. Vol. at 43-50.) Moreover, the trial court asked three separate pointed questions to determine no "promises, force, or threats were used to obtain" Campos's plea. Ind. Code § 35-35-1-3(a). (*See* Ex. Vol. at 51.) Thus, we are "'unlikely'" to determine that Campos's guilty plea was involuntary in this collateral attack. *See Davis*, 217 N.E.3d at 1233 (quoting *White*, 497 N.E.2d at 905).

[8] Nevertheless, "'defendants who can show that they were coerced or misled into pleading guilty by the judge, prosecutor or defense counsel will present colorable claims for relief.'" *Id.* (quoting *State v. Moore*, 678 N.E.2d 1258, 1266 (Ind. 1997), *reh'g denied*, *cert denied*, 523 U.S. 1079 (1998)). Our Indiana Supreme Court first considered a challenge to the voluntariness of a guilty plea based on the involvement of a trial court judge in plea negotiations in the case of *Anderson v. State*, 335 N.E.2d 225 (Ind. 1975). There, in the midst of trial, the trial judge "actively participated in plea bargaining with the defendant, apparently over the opposition of the State[.]" *Id.* at 227. After the trial judge negotiated an agreement with Anderson, Anderson pled guilty, was sentenced pursuant to the agreement, and then two months later filed a petition for post-conviction relief that asserted his guilty plea was not voluntary because of the trial judge's participation in plea bargaining.

[9] As it vacated Anderson's plea as involuntary, our Indiana Supreme Court provided the following explanation:

The unequal positions of the judge and the accused, one with the power to commit to prison and the other deeply concerned to avoid prison, at once raise a question of fundamental fairness. When a Judge becomes a participant in plea bargaining he brings to bear the full force and majesty of his office. His awesome power to impose a substantially longer or even maximum sentence in excess of that proposed is present whether referred to or not. A defendant needs no reminder that if he rejects the proposal, stands upon his right to trial and is convicted, he faces a significantly longer sentence. One facing a prison term, whether of longer or shorter duration, is easily influenced to accept what appears the more preferable choice. Intentionally or otherwise, and no matter how well motivated the judge may be, the accused is subjected to a subtle but powerful influence. A guilty plea predicated upon a judge's promise of a definite sentence by its very nature does not qualify as a free and voluntary act. The plea is so interlaced with the promise that the one cannot be separated from the other; remove the promise and the basis for the plea falls.

A judge's prime responsibility is to maintain the integrity of the judicial system; to see that due process of law, equal protection of the laws and the basic safeguards of a fair trial are upheld. The judge stands as the symbol of evenhanded justice, and none can seriously question that if this central figure in the administration of justice promises an accused that upon a plea of guilty a fixed sentence will follow, his commitment has an all-pervasive and compelling influence in inducing the accused to yield his right to trial. . . ."

*Id.* at 227-28 (quoting *U.S. ex rel. Elksnis v. Gilligan*, 256 F.Supp. 244, 254 (S.D.N.Y. 1966)) (citations omitted by *Anderson*). Because there was no transcript of the plea negotiation engaged in by the trial judge and Anderson, the record did not allow the Anderson Court to review the circumstances that

led to Anderson's guilty plea. The Court accordingly could not determine whether the trial judge "induced an involuntary guilty plea" and the Court reversed Anderson's conviction. *Id*. at 228. Campos argues the same result as *Anderson* is required herein because his trial court "participated in" his plea negotiations. (Br. of Appellant at 15.)

[10] The State argues that we should instead follow *Ellis v. State*, 744 N.E.2d 425 (Ind. 2001). In *Ellis*, our Indiana Supreme Court affirmed the denial of a petition for post-conviction relief in which a petitioner argued his guilty pleas "were involuntary because the trial judge rejected the initial plea agreement as likely too lenient and indicated during the hearing the minimum sentence he would accept." *Id*. at 426. The Ellis Court explicitly distinguished *Anderson* because Ellis had not had to negotiate one-on-one with the trial judge, as Anderson had. *Id*. at 428. Instead, Ellis's trial

> court reacted to a proposed plea only after it was negotiated by the parties and presented to the court as a mutual agreement. The court did not engage in any unnecessary and unwise editorializing. The parties here proposed an agreement that the court, exercising its discretion, declined to accept. Rather than sending the parties away to guess again at what might pass muster in some judicial version of hide-the-ball, the court indicated that the proposal was too lenient and offered two alternatives that it would deem acceptable, given the nature of the charges and what the court already knew from the presentence report and the hearing.
>
> While judicial involvement in plea negotiations can certainly go too far, a complete prohibition on judicial comment regarding a proposed plea agreement would create a separate set of problems.

> When a court exercises its discretion to reject a plea agreement, it is in both parties' interests that the court explain its reasons. If a proposal falls outside the range of what the court regards as reasonable, it will be helpful to the parties to know whether the court found the proposal too lenient or too harsh, so that they may re-negotiate if both choose to do so.

*Id*. at 429.

As in *Ellis*, Campos and the State presented a negotiated plea agreement to the trial court. (Ex. Vol. at 45) ("There's a plea agreement in the file."). The trial court in its discretion refused to accept the plea agreement because it called for an executed portion of the sentence that the court believed was too short. (*Id*. at 46) ("based on that prior history, there would have to be more executed time"). It was to the benefit of Campos and the State to be told why the trial court would not accept their plea agreement. *See Ellis*, 744 N.E.2d at 429 ("it is in both parties' interests that the court explain its reasons" for rejecting the plea agreement). It was also to their benefit to have the trial court express some opinion about "what sentence it might find marginally acceptable[.]" *Id*. at 430 (noting American Bar Association Standards permit a trial court to advise parties what sentence might be acceptable in light of the facts in the presentence investigation report). Campos's trial court did not have the benefit of a presentence investigation report, as the parties appeared for what had been scheduled as a pretrial hearing, and the trial court therefore asked a few questions to better understand the circumstances and determine what sentence might be acceptable to the trial court.

While Campos's trial court indicated it would call a jury if the parties could not reach a new agreement, the court was merely moving forward with Campos's previously scheduled trial date, which was one week away. The trial court did not threaten to impose a maximum sentence on Campos if he did not accept a different plea. *Cf. Garrett v. State*, 737 N.E.2d 388, 389 (Ind. 2000) ("I'm telling you, if it's me and you get found guilty with this record you'll get the eighty years."). Nor did the court say anything that might suggest Campos's upcoming trial would not be fair and impartial. *Contra Ellis*, 744 N.E.2d at 430 ("The message must not, of course, carry any express or implied threat that the defendant may be denied a fair trial or punished by a severe sentence if he or she declines to plead guilty."). Instead, after giving its opinion about an appropriate sentence, the trial court suggested the parties discuss what they wanted to do. (Ex. Vol. at 48) ("Why don't you guys talk about it?"); (*Id*. at 46) ("So if you guys want to talk about that or do we have a trial date?").

Campos argues *Ellis* is distinguishable because, whereas Ellis took two months to decide whether he would accept a different plea agreement, Campos and the State conferred for only about thirty seconds before returning to the record to provide another possible agreement to the trial court. (*Id*. at 55.) We decline to distinguish *Ellis* on that basis when, after that short break to negotiate, Campos affirmed on the record that he wished to plead guilty pursuant to that agreement, that he had not been forced or threatened to plead guilty, and that he was entering the plea of his own free will. (*Id*. at 51.) While "judicial participation in plea bargaining is highly suspect[,]" it "does not, as a matter of

law, render a guilty plea involuntary." *Anderson*, 335 N.E.2d at 227.
Considering all the circumstances surrounding the entry of Campos's plea, we
agree with the post-conviction court that Campos's plea was not involuntary.
*See, e.g.*, *Ellis*, 744 N.E.2d at 430 (affirming denial of post-conviction relief
because petitioner had not demonstrated trial court's statements rendered his
plea involuntary).

## Conclusion

[14]    Because Campos has not demonstrated the trial court's discussion with the
parties – about why it would not accept their plea agreement and what sentence
it might possibly accept – rendered his guilty plea involuntary, we affirm the
denial of his petition for post-conviction relief.

[15]    Affirmed.


Tavitas, J., and DeBoer, J., concur.

ATTORNEYS FOR APPELLANT

Amy E. Karozos
Public Defender of Indiana
Indianapolis, Indiana

James T. Acklin
Chief Deputy Public Defender
Indianapolis, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

Caroline G. Templeton
Supervising Deputy Attorney General
Indianapolis, Indiana